**CASE NO. ____**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA;
FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF
COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER
BANKERS ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS,
Plaintiffs – Appellants

v.

CONSUMER FINANCIAL PROTECTION BUREAU; ROHIT CHOPRA, in his
official capacity as Director of the Consumer Financial Protection Bureau,
Defendants – Appellees.

*On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division*

---

**EMERGENCY PETITION FOR WRIT OF MANDAMUS AND
ADMINISTRATIVE STAY**

---

Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

*COUNSEL FOR APPELLANTS*

Thomas Pinder
D.C. Bar No. 451114
tpinder@aba.com
Andrew Doersam
D.C. Bar No. 1779883
adoersam@aba.com
AMERICAN BANKERS
ASSOCIATION
1333 New Hampshire Ave. NW
Washington, DC 20036

***COUNSEL FOR AMERICAN
BANKERS ASSOCIATION***

Jennifer B. Dickey
D.C. Bar No. 1017247
Jdickey@uschamber.com
Maria C. Monaghan
D.C. Bar No. 90002227
mmonaghan@uschamber.com
U.S. CHAMBER LITIGATION
CENTER
1615 H Street NW
Washington, DC 20062

***COUNSEL FOR CHAMBER OF
COMMERCE OF THE UNITED
STATES OF AMERICA***

# CERTIFICATE OF INTERESTED PERSONS

***Chamber of Commerce of the United States et al. v. Consumer Financial Protection Bureau, et al.***, No. __

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Chamber of Commerce of the United States;

2. Fort Worth Chamber of Commerce;

3. Longview Chamber of Commerce;

4. American Bankers Association;

5. Consumer Bankers Association;

6. Texas Association of Business;

7. Consumer Financial Protection Bureau;

8. Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau;

9. Paul Hastings LLP, counsel for Appellants; and

10. Cantey Hanger LLP, counsel for Appellants.

 /s/ Michael Murray
Michael Murray
Attorney of Record for Appellants

# TABLE OF CONTENTS

**Page**

Statement of Relief Sought ......................................................................1

Issue Presented .........................................................................................1

Introduction and Nature of Emergency ....................................................1

Statement of Relevant Facts......................................................................4

Reasons for Granting the Writ .................................................................10

    I.      Plaintiffs have no other adequate means of relief. ...........................10

    II.    Plaintiffs have a clear and indisputable right to the writ...................11

    A.    The district court lacked jurisdiction to transfer the case. .................11

    B.    The district court clearly abused its discretion by relying on considerations rejected by this Court in *Clarke*. ...............................16

    III.   Plaintiffs have shown that a writ is appropriate under the circumstances. .....................................................................................23

Conclusion ..............................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007) ....................................................13

*BancPass, Inc. v. Highway Toll Administration, LLC*, 863 F.3d 391 (5th Cir. 2017) .................................................................................................................16

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004) ........................................... 10, 23

*Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299 (7th Cir. 1955)....21

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ................................................ 14, 16

*Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059 (5th Cir. 1990) .....................................................................................................................13

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ................................... 17, 23

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ........................12

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ..................................................10

*In re Space Exploration Technologies*, Corp., No. 24-40103, 2024 WL 948321 (Mar. 5, 2024) .....................................................................................................10

*In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023) ................................................ 10, 23

*In re Volkswagen of Am. Inc.*, 545 F.3d 304 (5th Cir. 2008) .............. 3, 8, 11, 20, 22

*In re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003) .............................21

*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985)....12

*Satanic Temple, Inc. v. Texas Health & Human Serv. Comm'n*, 79 F.4th 512 (5th Cir. 2023) .............................................................................................................12

*SEC v. Barton*, 79 F.4th 573 (5th Cir. 2023) ........................................................11

*Solomon v. Continental Am. Life. Ins.*, 472 F.2d 1043 (3d Cir. 1973) ...................21

*Taylor v. Sterrett*, 640 F.2d 663 (5th Cir. 1981) ....................................................11

i

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ................................................15

**Statutes**

15 U.S.C. § 1604(d) ................................................................................2, 5

15 U.S.C. § 1665d ................................................................................4

15 U.S.C. § 1665d(b) ................................................................................4

28 U.S.C. § 1404 ................................................................ 1, 6, 20, 23

## STATEMENT OF RELIEF SOUGHT

Petitioners-appellants, the Chamber of Commerce of the United States of America, Fort Worth Chamber of Commerce, Longview Chamber of Commerce, American Bankers Association, Consumer Bankers Association, and Texas Association of Business, seek an emergency writ of mandamus ordering the district court to reopen the case because its transfer order was void for lack of jurisdiction and/or immediately request that this case be transferred back to Forth Worth from the District of Columbia, to allow the Fort Worth Chamber of Commerce and other plaintiffs to continue to challenge the CFPB's new rule regarding credit card late fees as a violation of the U.S. Constitution and federal statutes.

## ISSUE PRESENTED

Whether the district court abused its discretion in transferring the case to the District of Columbia under 28 U.S.C. § 1404 during the pendency of a preliminary injunction appeal based on the location of the lawyers, the court's congestion, and the nature of this federal regulatory challenge.

## INTRODUCTION AND NATURE OF EMERGENCY

Plaintiffs, the Chamber of Commerce of the United States of America, Fort Worth Chamber of Commerce, Longview Chamber of Commerce, American Bankers Association, Consumer Bankers Association, and Texas Association of Business, respectfully petition for emergency mandamus relief ordering the district court to reopen this case and/or request that this case be transferred back to Forth

Worth from the District of Columbia, where the district court erroneously transferred this matter.

Plaintiffs are already appealing in this Court the district court's effective denial of its motion for a preliminary injunction. Plaintiffs sought a preliminary injunction to address the ongoing irreparable harm being inflicted on Plaintiffs' members by a rule the Consumer Financial Protection Bureau (CFPB) promulgated with a rushed (and unlawful) effective date, as well as in violation of the Appropriations Clause and the governing statutory provision. *See* Credit Card Penalty Fees (Regulation Z) [hereinafter the "Final Rule" or "Rule"]. App.012-107.[1] The CFPB violated a statutory requirement to allow at least six months to implement a rule like the one at issue here, 15 U.S.C. § 1604(d), and instead gave Plaintiffs' members only 60 days to comply. In light of the irreparable harm already being inflicted on Plaintiffs' members, Plaintiffs sought a preliminary injunction to stay the fast-approaching effective date of the Rule. Plaintiffs appealed the effective denial of their motion for a preliminary injunction when it became apparent that the district court would not rule on their motion and may transfer the case (erroneously) to a different district.

---

[1] This brief cites to the Appendix filed in the preliminary injunction appeal pending in this Court, No. 24-10248, which Plaintiffs have re-filed for purposes of this petition, along with the district court's transfer order.

Yesterday, the district court did just that, ordering the case transferred to the District of Columbia based primarily on its view that the lawyers are located there, that D.C. has a stronger local interest as the "epicenter" of regulatory challenges, and court congestion. Notwithstanding Plaintiffs' request that the district court stay any transfer order to allow for this Court's review, App.374, the district court immediately electronically transferred the case.

Mandamus relief is appropriate in these circumstances. Indeed, this Court has held that it is the only adequate relief for transfer orders. In addition, Plaintiffs' right to relief is indisputable for two independent reasons. First, the district court lacked jurisdiction to transfer the case while this Court was properly seized of jurisdiction to consider Petitioners' appeal from the effective denial of their motion for a preliminary injunction. Second, the district court clearly abused its discretion in ordering transfer under the *Volkswagen II* factors because the district court's decision is nearly indistinguishable from *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). Finally, mandamus is appropriate in these circumstances, where the district court's rationale envisions a sweeping change in challenges to federal rulemaking, and its decision to transfer the case will result in further irreparable harm to Plaintiffs.

# STATEMENT OF RELEVANT FACTS

The underlying challenge in this case concerns the CFPB's new Credit Card Penalty Fees Rule, which upends the way that credit card issuers have assessed late fees for over a decade. Congress has expressly recognized that issuers may impose "penalty fee[s]" when customers violate their credit card agreements, so long as such fees are "reasonable and proportional to the omission or violation." 15 U.S.C. § 1665d(b). And it tasked federal agencies—first the Federal Reserve Board of Governors (the "Board"), and now the CFPB—with establishing standards for ensuring that such "penalty fees" are reasonable and proportional, taking into account the costs incurred by the issuer from such violation, the deterrence effects of a late fee, and the conduct of the cardholder. 15 U.S.C. § 1665d. A decade ago, the Board promulgated, and the CFPB subsequently adopted, a regulatory framework that attempted to incorporate those three statutory criteria into its late-fee safe harbor.

In the Final Rule, the CFPB slashes the existing safe harbor amount by 75 percent, permitting credit card issuers to collect $8 for first-time and subsequent late payments instead of the $30 and $41 that were previously allowed. In setting that new amount, the CFPB has effectively jettisoned two of the criteria that Congress directed it to consider and focused solely on a subset of the costs that issuers incur as a result of late payments. Because the Rule will prevent issuers from collecting

4

the reasonable and proportional penalty fees that the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act") expressly authorizes, the Rule plainly exceeds the CFPB's statutory authority.

Worse, the CFPB issued this Rule in the shadow of precedent from this Court holding that the CFPB's funding structure, which draws funds from the Federal Reserve without congressional appropriation, violates the Appropriations Clause. And it imposed a 60-day effective date that is not only unworkable for credit card issuers, but violates the Truth in Lending Act's provision that any rules "requiring any disclosure which differs from the disclosures previously required by this part . . . shall have an effective date of that October 1 which follows by at least six months the date of promulgation." 15 U.S.C. § 1604(d).

The CFPB announced the rule on March 5, 2024, and Plaintiffs promptly filed this lawsuit and motion for preliminary injunction on March 7, 2024. Plaintiffs decided not to request a temporary restraining order out of consideration for district court resources, but requested expedited briefing and a decision within 10 days (by March 17, 2024), explaining that the process of printing and distributing new disclosures had to begin immediately, as it typically takes 4 months when done on an issuer-by-issuer basis and would take much longer with issuers representing 95% of the affected accounts forced to act at once. The next day, Judge O'Connor granted Plaintiffs' motion for expedited briefing for "good cause" and set a briefing schedule

that concluded on March 14, 2024. App.210. Judge O'Connor then recused himself on March 14, 2024, and Judge Mark Pittman was assigned. App.251.

On March 18, 2024, four days after the preliminary-injunction motion was fully briefed, Judge Pittman issued an order inviting the CFPB to file a motion for discretionary transfer of the case under 28 U.S.C. § 1404(a) and setting a briefing schedule that would continue for an additional week. App.275-76. The CFPB gave notice on March 19, 2024, of its intention to file such a motion. App.278.

In light of the accruing irreparable harm and concern that a transfer would both cause additional irreparable harm and deny Plaintiffs' appellate review in this Court, Plaintiffs filed a motion for expedited consideration of their preliminary injunction motion, asking the district court to resolve that motion *before* considering any discretionary transfer and in all events by Friday, March 22, 2024. App.282-84; App.303. Plaintiffs noted that the date was just one week before today, March 29, 2024, the date on which notices of mitigating changes-in-terms would need to be received by cardholders, to avoid even greater irreparable harm from accruing after the effective date. *Id.* Plaintiffs further requested that, if the court denied their motion, the court issue an injunction pending appeal. *Id.* Plaintiffs explained that because venue is proper in the Fort Worth Division, any question of discretionary transfer did not go to the propriety of injunctive relief. Plaintiffs further noted that, although they had presented other claims in their motion, the court could grant an

injunction by relying solely on this Court's binding precedent regarding the Appropriations Clause and Plaintiffs' uncontested showing of irreparable harm.

The district court denied Plaintiffs' motion for expedited consideration on March 20, 2024, citing the demanding dockets in the Northern District of Texas, as compared to the District of Columbia. App.308. The court did not address the harms cited by Plaintiffs. *See id.* ("[T]he Court does not have the luxury to give increased attention to certain cases just because a party to the case thinks their case is more important than the rest.").

That same day, the CFPB filed a motion to transfer the case to the U.S. District Court for the District of Columbia. App.310. The motion advanced a novel theory of venue under which plaintiffs challenging agency action may do so only in (a) the district where the rule was promulgated and the agency resides (typically, the District of Columbia), or (b) the district where a plurality of the plaintiffs are located *and*, in the case of association plaintiffs, where at least one of those plaintiffs' members is *headquartered*. That theory has no basis in law, would concentrate virtually all agency challenges within judicial districts that cover major cities, and would unduly deprive plaintiffs of their privilege to file claims in any judicial division permitted by the general venue statute. In compliance with the district court's briefing schedule, Plaintiffs submitted a response in opposition and asked

that, if the court were inclined to grant Defendants' motion, it stay its transfer order to allow for this Court's review in a timely fashion. App.374.

After Plaintiffs submitted a response and filed their notice of appeal and motion for injunction pending appeal in this Court, the district court set an in-person hearing for the preliminary injunction for Tuesday, April 2, at which it directed the parties to be prepared to address all issues in this case. The same day, the district court also ordered that the parties conduct an in-person, face-to-face meet-and-confer to prepare and submit a joint status report on Tuesday, April 2.

Two days later, at the close of business, the district court granted the Defendants' motion to transfer, without staying its order, notwithstanding Plaintiffs' request. Consequently, the district court immediately electronically transferred the case to the District of Columbia.

In its transfer order, the district court emphasized that "eighty percent of counsel in this case are effectively working out of DC," that "the Northern District of Texas has a significantly busier docket" than the District of Columbia, and that the case "challeng[es] the actions of government officials in the District of Columbia." Transfer Order at 4-6 [attached as Exhibit 1]. Specifically, in applying the eight factors from *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc) (*Volkswagen II*), the court concluded that three of the four private interest factors—ease of access to sources of proof, availability of compulsory

process, and cost of witness attendance—were "neutral" regarding transfer, but that the fourth factor—"all other practical factors that might make a trial more expeditious and inexpensive"—"heavily weighs in favor of transfer" because eight of the ten lawyers for plaintiffs "list their offices in the District of Columbia." *Id*. at 3-4. With respect to the public interest factors, the court concluded that "court congestion" "heavily favors transfer" to the District of Columbia because the Northern District of Texas is busier than the District of Columbia. *Id.* at 4-5. The court also reasoned that "there is a strong interest in having this dispute resolved in the District of Columbia" because the case "chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia": The U.S. District for the District of Columbia, in the court's view, "is the epicenter for these types of rules and challenges thereto." *Id.* at 4-6. The court concluded that, notwithstanding the undisputed facts presented by Plaintiffs that Texas and Fort Worth in particular contain disproportionate shares of accounts receivable and cardholders, App.374, "there is no unique or particular impact felt in the Northern District of Texas." *Id.* at 6. The court acknowledged that the final two public interest factors—concerning the expertise of the Northern District of Texas—were "neutral." *Id.*

Plaintiffs moved for an administrative stay of the district court's transfer order within hours of receipt of the district court opinion, in accordance with this Court's

procedure in the *SpaceX* case. *See, e.g.*, *In re Space Exploration Technologies*, *Corp.*, No. 24-40103, 2024 WL 948321 (Mar. 5, 2024) (Elrod, J., dissenting) ("Because the stay was entered before transfer of the case was complete, we confirmed that we retained jurisdiction over the case"). This Court granted an administrative stay the following morning. After that stay was granted and shortly before the filing of this petition, the District Court for the District of Columbia docketed the case. *See Chamber of Commerce et al. v. CFPB*, 1:24-cv-00915 (D.D.C.).

## REASONS FOR GRANTING THE WRIT

A writ of mandamus is warranted if the petitioner satisfies three conditions. First, the petitioner must show that there are "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). Second, the court "must be satisfied that the writ is appropriate under the circumstances." *Id*. at 381. And third, the petitioner must show a "clear and indisputable right to the writ." *Id.* Plaintiffs satisfy all three conditions.

## I. Plaintiffs have no other adequate means of relief.

With respect to a motion for transfer under Section 1404(a), "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.' " *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd*., 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).

10

## II.   Plaintiffs have a clear and indisputable right to the writ.

Petitioners establish a clear and indisputable right to the writ for two reasons. First, the district court lacked jurisdiction to transfer the case while this Court was properly seized of jurisdiction to consider Petitioners' appeal from the effective denial of their motion for preliminary injunction.  Second, the district court clearly abused its discretion in ordering transfer under the *Volkswagen II* factors because the district court's decision is nearly indistinguishable from *Clarke*.  *See Volkswagen II*, 545 F.3d at 311 (right is indisputable if district court clearly abused discretion).

### A. The district court lacked jurisdiction to transfer the case.

"This circuit follows the general rule that the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as the judgment has not been stayed or superseded." *SEC v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023).  That is true even in cases involving appeals from interlocutory orders, though in the case of an interlocutory order, "the district court may still proceed with matters not involved in the appeal."  *Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981).  Here, Petitioners properly lodged their notice of appeal from the effective denial of their motion for preliminary injunction on March 25 and immediately sought a motion for injunction pending

appeal. This Court was thus properly seized of jurisdiction and the district court lost control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

Here, the transfer order implicates the aspects of the case involved in the appeal for at least two reasons. First, a transfer out of circuit would frustrate this Court's ability to provide meaningful relief to Petitioners in their appeal. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) (allowing district court action that "did not interfere with but instead facilitated review of the pending appeal"). If (as here) the district court is able to transfer the case out of the circuit, there exists no case that this Court could reverse and remand based on the failure of the district court to grant Petitioners' motion for preliminary injunctive relief. It is thus unclear how this Court would be able to provide meaningful relief in the appeal. A transfer does not present an appealable final judgment that could simply be merged with the denial of the motion for preliminary injunction for purposes of review. *Compare with Satanic Temple, Inc. v. Texas Health & Human Serv. Comm'n*, 79 F.4th 512 (5th Cir. 2023) (explaining that if a district court denied permanent injunctive relief during the pendency of an appeal from the denial of preliminary relief, plaintiffs could simply seek review in the appeal from that final judgment). Instead, a transfer order essentially puts a case out of the reach of this Court, which had previously seized jurisdiction. Precedent from

this Court and the Supreme Court confirms that, in such circumstances, the district court is divested of jurisdiction to undertake acts that would frustrate such appellate jurisdiction.

*Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007), for example, illustrates the point in cases involving qualified immunity. There, a defendant sought appeal from the denial of qualified immunity, which she sought in defense of a claim under 42 U.S.C. § 1983, but not in defense of other claims under Title IX. The question on appeal was to what extent the district court could proceed with discovery while the case was on appeal. This Court explained that "[h]ow broadly a court defines the aspects of the case on appeal depends on the nature of the appeal." *Alice L.*, 492 F.3d at 565. The court noted that, because qualified immunity is "an entitlement to be free from the burdens of time-consuming pre-trial matters and the trial process itself," the qualified-immunity appeal prevents the defendant from being subject to discovery on the claims to which qualified immunity would apply. *See id.* But it would not prevent discovery on other claims. *Id.* That makes sense—because in order for the Fifth Circuit to provide any meaningful relief on the defendant's qualified immunity appeal, discovery must not have proceeded with the claims on which she had immunity. *See also Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (holding that a district court lacked power to grant plaintiffs' motion to amend and drop all CERCLA claims because it did not

have the power to "alter the status of the case as it rests before the Court of Appeals").  The same can be said in this case—the district court lacked the power to alter the status of the case and prevent this Court from providing meaningful relief in the already-lodged appeal.

The Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), is likewise helpful.  There, the Court considered whether an interlocutory appeal relating to arbitrability of a suit requires a stay of district court proceedings, and concluded that it did.  *See id.* at 740.  The Court reasoned, "Absent an automatic stay of district court proceedings, Congress's decision … to afford a right to an interlocutory appeal would be largely nullified.  If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along." *Id.* at 743.

Here, too, petitioners' right to an interlocutory appeal of the denial of their motion for preliminary injunction would be essentially nullified if a district court could transfer away the case before the Fifth Circuit could review its decision.  Allowing the transfer would "largely defeat[] the point of the appeal." *See id.* Indeed, in some sense, if district courts could just transfer a case out of Circuit while

an appeal from the denial of a preliminary injunction were pending, and thus deny such movants meaningful relief, the right to appeal from such denials would be "like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Id.* This Court should not countenance that result.

The second basis on which the transfer order is inextricably bound up in the appeal is that it is relevant to a decision on Petitioners' claim of effective denial. In determining whether an effective denial has occurred, this Court considers whether the district court has undertaken actions that "while not explicitly denying a preliminary injunction, nonetheless ha[ve] the practical effect of doing so and might cause irreparable harm absent immediate appeal." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023). In assessing that "practical effect," courts have considered, amongst other points, whether the district court required plaintiffs to respond to other court requests unrelated to the plaintiffs' entitlement to preliminary injunctive relief. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). Petitioners have argued in their appeal that delaying a ruling on their fully-briefed preliminary injunction motion (for which likelihood of success on the merits and irreparable harm were conceded) to invite and then entertain briefing on a motion for discretionary transfer constituted effective denial. This Court's assessment of the merits of discretionary transfer in this case may thus be relevant to this Court's determination as to effective denial.

Finally, it is worth noting that the district court would have been divested of jurisdiction to issue the transfer order even if this Court ultimately disagreed with Petitioners' that our motion for preliminary injunction had been effectively denied. *See Coinbase*, 599 U.S. at 745 (accepting that stays in the district court would be required even in the case of "frivolous appeals" but that circuit courts have other tools to address frivolous appeals). This is not one of the narrow circumstances in which this Court has permitted district courts to certify an appeal as dilatory or frivolous and proceed with the case. *See BancPass, Inc. v. Highway Toll Administration, LLC*, 863 F.3d 391, 400 (5th Cir. 2017). Nor do Petitioners believe that the district court could have made any such finding in light of the course of conduct in the district court and Petitioners' uncontested showing of ongoing and irreparable harm. But the important point for purposes of this mandamus petition is that this Court seized with jurisdiction to make that assessment at the time of the transfer order. The district court cannot prevent this Court from exercising that jurisdiction by transferring the case out of circuit.

### B. The district court clearly abused its discretion by relying on considerations rejected by this Court in *Clarke*.

A defendant moving to transfer venue bears the heavy burden of "clearly demonstrat[ing]" that its chosen venue is "clearly more convenient," not merely "more likely than not to be more convenient." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "Assuming that jurisdiction exists and venue is proper, the fact that

litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, the party moving for transfer must show that "the marginal gain in convenience will be significant" and that "those marginal gains will actually materialize in the transferee venue." *In re Clarke*, 94 F.4th at 508.

More specifically, district courts in the Fifth Circuit must consider eight factors when weighing whether the moving party carried its burden. The four private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive," *Def. Distributed*, 30 F.4th at 433-34, and the public-interest factors are "([5]) the administrative difficulties flowing from court congestion; ([6]) the local interest in having localized interests decided at home; ([7]) the familiarity of the forum with the law that will govern the case; and ([8]) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *id*. at 435.

In this case, as in *Clarke*, the district court recognized that most of the factors were neutral. Yet also as in *Clarke*, the district court erroneously concluded that court congestion and local interests favored transfer. And the district court compounded those errors by focusing on the location of the *lawyers* when assessing

17

the fourth private interest factor concerning practicalities. As in *Clarke*, the district court committed a clear abuse of discretion in its ruling.

## 1. Public interest factors

As in *Clarke*, the district court clearly abused its discretion in concluding that the two public interest factors of court congestion and local interests weighed in favor of transfer to the District of Columbia. (It concluded the other two factors were neutral.)

a. Court Congestion. In *Clarke*, this Court expressly held that that court congestion alone is not a sufficient basis for transfer because it would undermine the "weight" due to a plaintiff's choice and "ignores the plaintiffs' role as master of the complaint." *In re Clarke*, 94 F.4th at 515. Indeed, as this Court commented in that case in assessing a motion to transfer from a federal district court in Texas to the District of Columbia, "it would be a stretch to say that court congestion 'favors D.D.C.' and not just transfer 'somewhere else.'" *In re Clarke*, 94 F.4th at 515. Yet in this case, the district court focused on court congestion statistics to conclude that "court congestion" "heavily favors transfer" to the District of Columbia. That is clearly wrong after *Clarke*. Although this factor may favor transfer, it does not favor transfer to the District of Columbia, let alone "heavily" so.

b. Local Interests. In *Clarke*, this Court concluded that the district court "clearly abused its discretion" in concluding that local interests "weighed heavily in

favor of" transfer to the District of Columbia.  This Court held that the "local-interest inquiry is concerned with the interest of non-party citizens" in adjudicating the case, not "the parties' connections to the venue."  *Id.* at 511.  Because the effects of the regulatory action would be felt by regulated parties in the district (and also in the District of Columbia), this Court concluded that this factor was "neutral." *Id*.

The same is the case here.  There can be no doubt that regulated parties will feel the effects of the CFPB's rule in the district, given the undisputed facts that two of Plaintiffs' declarants have over ten percent of their total receivables from Texas, with over 800,000 cardholders combined in the Fort Worth region.  App.391.  Indeed, that harm is disproportionate to Texas.  *See id*.

To avoid this clear conclusion, the district court observed that there is no "particularized injury in the Northern District of Texas," and under Plaintiffs' theory, venue could lie in any city with regulated parties and that parties can choose plaintiffs "in order to establish venue."  Transfer Order at 5.  But that is exactly the reasoning rejected in *Clarke*:  "That an interest is highly diffuse (but not completely diffuse) only increases the chance it is regarded as equally important by citizens in both the transferor and transferee districts (thereby netting out to zero)." *Id.* at 511.  In addition, a judge cannot ignore the location of a plaintiff with standing, such as the Fort Worth Chamber, because the court does not like why it chose to join a

lawsuit.  Consequently, this factor is at best "neutral" regarding transfer to the District of Columbia.

## 2. Private interest factors

The district court also clearly abused its discretion in concluding that one of the private interest factors—practicalities of litigation—weighed heavily in favor of transfer.  (It concluded the other three factors were neutral).

In assessing the last of the private-interest factors, the district court concluded that the fourth factor "heavily weighs in favor of transfer" because "there are ten attorneys spanning five different firms or organizations representing the various Parties in the case" and "[o]f the ten, *eight* list their offices in the District of Columbia," such that "any proceedings th[e] Court conducts … will require all of Defendants' counsel and two-thirds of Plaintiffs' counsel to travel to Fort Worth— a task that will be charged to their clients or to the government."  Order on Mot. to Transfer 4.  The court indicated that "taxpayers, including residents of Fort Worth, would foot an expensive bill for this litigation."  *Id.*

As an initial matter, the district court cited *no* authority for the proposition that the location of *counsel* (as opposed to parties or witnesses) is relevant to the private-interest factors under *Volkswagen II*, and indeed precedent confirms it is not.  This Court held in earlier iterations of *Volkswagen* that "[t]he word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor

to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004). Nothing in *Volkswagen II* contradicts the point, nor purports to overrule this Court's earlier precedent that "[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue." *See In re: Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003). And at least two of this Court's sister circuits agree, holding that "[t]he convenience of counsel is not a factor to be considered" in the § 1404 analysis. *See Solomon v. Continental Am. Life. Ins.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955), *cert. denied*, 350 U.S. 822 (1955). Indeed, it is worth noting that this Court did not consider the location of counsel in assessing transfer to the District of Columbia in *In re Clarke*, despite the fact that most of the relevant counsel in that case were also located in the District of Columbia. *See* 94 F.4th at 506 & n.12.

Worse, considering such counsel in the private-interest analysis would lead to gamesmanship. For example, the CFPB asked Petitioners to consent to a motion to waive the local counsel requirement for the agency in this case, and Petitioners agreed. If such a request were relevant to venue, federal agencies may be more inclined to make such requests and plaintiffs would have no incentive to consent to them, even though they save money for the taxpayer. Nor should Plaintiffs be deterred from selecting their counsel of choice and listing them on pleadings based

on concerns about how the location of their lawyers would affect any transfer analysis.

Finally, the district court's reliance on the location of counsel does not "reflect[] the appropriate deference to which the Plaintiffs' choice of venue is entitled," *Volkswagen II*, 545 F.3d at 315. Of the eight attorneys that reside in the District of Columbia, six of those are counsel for Plaintiffs, and four of those are *in-house* counsel for some of the Plaintiffs. Weighing the location of Plaintiffs' counsel *against* Plaintiffs improperly discounts Plaintiffs' choice of venue.

The district court thus plainly abused its discretion in finding that the location of counsel in this case weighed heavily in favor of transfer.

### 3. Good cause

In light of these errors regarding the public and private interest factors, Defendants did not, as they were required to do, "clearly establish good cause for transfer based on convenience and justice." *Clarke*, 94 F.4th at 514. Of the eight factors, seven are neutral under this Court's precedents. And the only one that is arguably not neutral—court congestion—neither favors transfer to the District of Columbia, as opposed to somewhere else, nor is "by itself" sufficient to justify transfer. *Id.* Therefore, the district court clearly abused its discretion in ordering transfer to the District of Columbia.

## III.   Plaintiffs have shown that a writ is appropriate under the circumstances.

Plaintiffs also have satisfied the third mandamus requirement, that "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380.

Mandamus is "especially appropriate" when, as here, "the issues implicated have importance beyond the immediate case." *Def. Distributed*, 30 F.4th at 426. This Court has "recognized that § 1404(a) decisions often have "importance beyond the immediate case ... [b]ecause venue transfer decisions are rarely reviewed," and "district courts have ... applied [our] tests with too little regard for consistency of outcomes." *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023). Consequently, "granting mandamus in [such a] case will improve 'consistency of outcomes' by further instructing when transfer is—or, for that matter, is not—warranted in response to a § 1404(a) motion." *Id*.

This case in particular involves issues of importance "beyond the immediate case." Those issues include the erroneous legal focus of the district court on the location of the lawyers for a particular dispute, on court congestion, and that the District of Columbia should be the "epicenter" for APA challenges. The district court's ruling contemplates sweeping implications for APA challenges. It is hard to see how any APA challenges would remain in this Circuit if court congestion, the location of lawyers, and that D.C. should be the "epicenter" of regulatory challenges justifies transfer in the mine-run of cases. In addition, the district court's ruling also

contemplates that district courts could frustrate this Court's review of denials of preliminary injunctions by simply transferring the case after an appeal is lodged.

Finally, the constitutional claims presented by this case "have importance beyond the immediate case." Defendants have admitted that in this circuit Plaintiffs have established a likelihood of success on the merits in light of binding precedent. Defendants should not be able to use an erroneous Section 1404(a) motion as a way around that precedent.

## CONCLUSION

Plaintiffs respectfully ask that the Court grant their emergency motion for a writ of mandamus and, during its consideration of that motion, continue in place an administrative stay regarding the district court's transfer order.

Dated: March 29, 2024

Respectfully submitted,

*/s/ Michael Murray*
Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com

Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***COUNSEL FOR APPELLANTS***

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on March 29, 2024, I filed foregoing motion via the Court's CM/ECF system and

also caused the foregoing to be served by email on the following counsel for

Defendants-Appellees:

Stephanie Garlock
Justin Michael Sandberg
1700 G Street, NW
Washington, DC 20552
stephanie.garlock@cfpb.gov
justin.sandberg@cfpb.gov

Pursuant to Fed. R. App. P. 21(a), I hereby certify that on March 29, 2024, I

also caused the foregoing to be served by email on the district court at the

following email address (Pittman_Orders@txnd.uscourts.gov).

*/s/ Michael Murray*
Michael Murray
*Attorney for Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of Fed. R. App. P. 21 because it contains fewer than 7800 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13. I certify that the facts supporting emergency consideration of the motion are true and complete.

Dated: March 29, 2024

*/s/ Michael Murray*
Michael Murray
*Attorney for Appellants*
