**No. 24-10266**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE UNITED STATES OF
AMERICA, *et al.*,

*Petitioners*,

*v.*

CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,

*Respondents.*

On Appeal From the United States District Court
For the Northern District of Texas, Fort Worth Division
Case No. 4:24-cv-213

## RESPONDENTS' OPPOSITION TO EMERGENCY
## PETITION FOR WRIT OF MANDAMUS

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*
Joseph Frisone
Justin M. Sandberg
  *Senior Counsel*
Stephanie B. Garlock
  *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

Introduction .........................................................................................1

Background ..........................................................................................4

Legal Standard ...................................................................................8

Argument.............................................................................................9

    I.    Plaintiffs do not have a clear and indisputable right to the writ................9

        A.    The district court had jurisdiction to order the transfer. .......................9

            1.    The district court retained jurisdiction because there was no valid appeal. .................................................................................10

            2.    Even a valid preliminary injunction appeal would not divest the district court of jurisdiction to rule on a transfer motion. ........13

        B.    The district court's decision to transfer this case was not a clear abuse of discretion.............................................................................16

            1.    The public interest factors............................................................17

            2.    The private interest factors...........................................................23

            3.    The transfer decision ....................................................................25

    II.    Issuance of the writ is not appropriate.....................................................27

Conclusion...........................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adab v. U.S. Citizenship & Immigr. Servs.*,
  2015 WL 6249563 (C.D. Cal. Feb. 9, 2015) ........................................23

*Alice L. v. Dusek*,
  492 F.3d 563 (5th Cir. 2007) ............................................ 4, 13, 14, 30

*Arthur J. Gallagher & Co. v. Babcock*,
  339 F. App'x 384 (5th Cir. 2009) ..........................................................12

*Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*,
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ....................................21

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) .......................................................... 1, 27, 28, 29

*Clarke v. Commodity Futures Trading Comm'n*,
  74 F.4th 627 (5th Cir. 2023) ........................................... 10, 11, 12

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) .............................................................................14

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ..................................................................6

*Cook Cnty., Ill. v. Wolf*,
  498 F. Supp. 3d 999 (N.D. Ill. 2020) ...................................................29

*Dayton Indep. Sch. Dist. v. U.S. Min. Prod. Co.*,
  906 F.2d 1059 (5th Cir. 1990) ................................................. 10, 14, 15

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ...................................................... 3, 28, 31

*Doe v. Pub. Co. Acct. Oversight Bd.*,
  2024 WL 1096546 (N.D. Tex. Mar. 13, 2024) .......................... 18, 19

*FBME Bank Ltd. v. Lew*,
  125 F. Supp. 3d 109 (D.D.C. 2015) ......................................................23

*Ford-Evans v. United Space All. LLC*,
    329 F. App'x 519 (5th Cir. 2009)...........................................................................19

*Gardipee v. Petrol. Helicopters, Inc.*,
    49 F. Supp. 2d 925 (E.D. Tex. 1999) ..................................................................26

*H.K. Porter Co., Inc. v. Metro. Dade Cnty.*,
    650 F.2d 778 (5th Cir. 1981) ...............................................................................12

*In re Beazley Ins. Co.*,
    2009 WL 7361370 (5th Cir. May 4, 2009).........................................................30

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ....................................................................... *passim*

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) .................................................................................9

*In re Horseshoe Ent.*,
    337 F.3d 429 (5th Cir. 2003) ........................................................................ 24, 25

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ...............................................................................28

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ....................................................................... *passim*

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ........................................................................ 24, 25

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ....................................................................... *passim*

*June Med. Servs., LLC v. Phillips*,
    2022 WL 4360593 (5th Cir. Sept. 28, 2022).....................................................12

*Matter of 3 Star Properties, L.L.C.*,
    6 F.4th 595 (5th Cir. 2021)..................................................................................19

*McCoy v. La. State Bd. of Educ.*,
    332 F.2d 915 (5th Cir. 1964) ...............................................................................11

*NRDC v. Thomas*,
   805 F.2d 410 (D.C. Cir. 1986).................................................................23

*Nuziard v. Minority Bus. Dev. Agency*,
   2024 WL 965299 (N.D. Tex. Mar. 5, 2024) ......................................21

*Rutherford v. Harris Cnty.*,
   197 F.3d 173 (5th Cir. 1999) .................................................................10

*State of Fla. v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021)..............................................................29

*Stewart v. Azar*,
   308 F. Supp. 3d 239 (D.D.C. 2018) ....................................................23

*Students for Fair Admissions v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) .................................................................................22

*Texas v. Becerra*,
   667 F. Supp. 3d 252 (N.D. Tex. 2023)................................................29

*United States v. Green*,
   882 F.2d 999 (5th Cir. 1989) .................................................................13

*United States v. Lynd*,
   301 F.2d 818 (5th Cir. 1962) ......................................................... 11, 12

**Statutes**

15 U.S.C. § 1665d(a) ......................................................................................4

15 U.S.C. § 1665d(b) ......................................................................................4

15 U.S.C. § 1665d(e) ......................................................................................4

28 U.S.C. § 1391(e) ............................................................................... 16, 27

28 U.S.C. § 1404 .............................................................................................1

28 U.S.C. § 1404(a) ............................................................................. 6, 7, 16

28 U.S.C. § 1406 .............................................................................................6

**Regulations**

12 C.F.R. § 1026.52(b)(1)(i) ........................................................................7

**Other Authorities**

U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More States Gain Population* (Dec. 19, 2023) ............................................................ 20

## INTRODUCTION

Plaintiffs petition this Court for a writ of mandamus undoing Judge Pittman's decision to transfer their challenge to a Consumer Financial Protection Bureau rulemaking to the District Court for the District of Columbia. Emergency Petition for Writ of Mandamus and Admin. Stay at 1 (Pet.), ECF No. 5. Plaintiffs attempt a feat of alchemy—the conversion of the ordinary into the extraordinary. For this case involves an ordinary objection to a district court's exercise of discretion to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404, whereas the writ is a "drastic and extraordinary remedy reserved for *really extraordinary causes*." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up) (emphasis added).

Plaintiffs' efforts at alchemy fail, as all do. There was nothing extraordinary about the decision to transfer this case to D.C.: It involves three plaintiffs headquartered in Washington, D.C., defendants based in Washington, D.C., and a rule that was issued in Washington, D.C. Indeed, this case has no meaningful ties to the Northern District of Texas. The rule affects only the nation's largest credit card issuers—approximately 30-35 total nationwide, none based in the Northern District. The challengers are a group of industry associations, only one of which is based in the Northern District—and that association sues to vindicate the interests

1

of a Utah card issuer with no special connection to Texas. The Court should deny Plaintiffs' petition.

To demonstrate that issuance of the writ is appropriate, Plaintiffs must establish not only that there is no other adequate remedy, but also that their "right to issuance of the writ is clear and indisputable" and that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*Volkswagen II*) (cleaned up). Plaintiffs cannot satisfy the latter two elements.

Plaintiffs contend that their right to the writ is "clear and indisputable" because (i) the district court lacked jurisdiction to transfer the case given the pendency of an appeal of the "denial" of Plaintiffs' preliminary injunction motion, and (ii) the court clearly abused its discretion in applying the eight transfer factors set out in *Volkswagen II*, *id.* at 315. Pet. 11. Plaintiffs are wrong. Only a valid appeal can affect a district court's jurisdiction, so Plaintiffs' baseless appeal challenging the district court's refusal to rule on their preliminary injunction motion within 15 days after they filed it didn't affect the district court's authority. And even if a valid appeal on the preliminary injunction had been pending, that would not have deprived the district court of jurisdiction to consider the distinct issue of which venue was the more appropriate one for this case.

2

There is similarly no merit to Plaintiffs' argument that the district court clearly abused its discretion in considering the *Volkswagen* factors. *See Volkswagen II*, 545 F.3d at 312 (requiring a "clear abuse[] of discretion" to justify issuance of the writ). District courts have "broad discretion in deciding whether to order a transfer," *id.* at 311, and the district court did not traverse the bounds of its broad remit—much less clearly so—by concluding that transfer was proper given the relative (i) congestion of the courts, (ii) localized interests, and (iii) practical problems with proceeding in each venue. At bottom, Plaintiffs brought a case with (at best) only the thinnest of ties to the Northern District, and the district court properly determined transfer was warranted.

Finally, Plaintiffs cannot demonstrate that issuance of the writ is appropriate under the circumstances. Issuance of the writ is appropriate when the "issues also have an importance beyond the immediate case." *Id.* at 319. The issues here do not have any such importance. Plaintiffs' appeal to the general need for guidance on the application of the *Volkswagen* factors, Pet. 23, falls flat because this Court has provided ample guidance, *see, e.g.*, *In re Clarke*, 94 F.4th 502 (5th Cir. 2024); *In re TikTok, Inc*., 85 F.4th 352 (5th Cir. 2023); *Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). This Court has likewise provided sufficient guidance regarding the weighing of various factors and the effects of an appeal on district court jurisdiction. *See, e.g.*, *TikTok*, 85 F.4th at 358; *Alice L. v. Dusek*, 492 F.3d

3

563, 564 (5th Cir. 2007); *contra* Pet. 23-24. Finally, the constitutional issue Plaintiffs raise (Pet. 24) is not relevant here—both because the proper inquiry is whether the issues at stake in the mandamus petition, not the case as a whole, have importance beyond the immediate case, and because this Court has already addressed the only constitutional issue (and the Supreme Court soon will, too).

Accordingly, the Court should deny the petition.

## BACKGROUND

Plaintiffs challenge a Bureau regulation under the Credit Card Accountability and Disclosure Act (the CARD Act). As relevant here, the CARD Act (1) mandates that the fees credit card issuers impose on consumers who fail to pay on time must be "reasonable and proportional" to the violation; (2) instructs the Bureau to "establish standards for assessing whether" any late fee satisfies that directive; and (3) authorizes—but does not require—the Bureau to establish a "safe harbor" fee amount presumed to be reasonable and proportional. *See* 15 U.S.C. § 1665d(a), (b), (e).

Exercising that authority, the Bureau issued a final rule on credit card late fees on March 5, 2024. App.012 (the Late Fee Rule or the Rule). Among other things, the Rule repeals the previously applicable safe harbor amount for late fees charged by the nation's largest credit card issuers—which the Federal Reserve Board of Governors had set in 2010, before authority over the relevant CARD Act

provision transferred to the Bureau. App.013, App.039. With the benefit of a decade of experience and data, the Bureau concluded that the Board-set safe harbor—which, after inflation adjustments, had climbed to $30 for a first offense and $41 for subsequent violations—had allowed late fees to balloon far beyond what was "reasonable and proportional." App.039. The Rule then institutes a new, lower safe harbor that the Bureau has determined is consistent with the CARD Act's mandates. App.041. These changes are applicable only to approximately 30 to 35 of the largest credit card issuers in the country. App.028. The minority of large card issuers that, in the Bureau's estimate, may not be able to cover relevant costs with an $8 fee can continue to impose higher fees if they are cost-justified, 12 C.F.R. § 1026.52(b)(1)(i). App.045. The Late Fee Rule is set to take effect on May 14. App.072.

Two days after the Bureau published the Rule on its website, Plaintiffs sued to challenge the regulation in the Fort Worth Division of the Northern District of Texas. Plaintiffs are six business associations of varying sizes and scopes. Only one—the Fort Worth Chamber of Commerce—is located in the Northern District. App.168. Plaintiffs raise a constitutional challenge to the rule based on *Community Financial Services Ass'n of America, Ltd. v. CFPB* (*CFSA*), which held the Bureau's statutory funding mechanism unconstitutional, and which the Supreme Court is currently reviewing. 51 F.4th 616, 638 (5th Cir. 2022), *cert granted*, 143

S. Ct. 978 (2023). They also raise four claims under the Administrative Procedure Act (APA).

Plaintiffs immediately moved for a preliminary injunction. *See* App.109-App.110. The Bureau opposed three business days later, as directed by the court. App.210, App.212. Among other arguments, the Bureau contended that Plaintiffs are unlikely to succeed on the merits because venue in the Northern District of Texas is improper and the case should be transferred or dismissed under 28 U.S.C. § 1406. App.231-App.235.

A week after the complaint was filed, the case was reassigned to Judge Mark Pittman. App.009, App.251. Two business days later, Judge Pittman asked for expedited supplemental briefing on whether the case should be transferred under 28 U.S.C. § 1404(a). In that order, the court noted "that there appears to be an attenuated nexus to the Fort Worth Division," and expressed "concerns" over whether it was "the correct venue to hear this lawsuit." App.275.

The next day (March 19), Plaintiffs moved for "expedited consideration" of their preliminary injunction motion "before" the district court "t[ook] up the issue of venue." App.282. In Plaintiffs' view, the district court "need not be troubled by venue in this Division," and should instead grant them a preliminary injunction. App.299. They threatened to seek appellate review if the court did not act that week. App.293.

The district court denied the motion for expedited consideration. App.307-App.308. The court explained that it could "determine what briefing it may or may not need"—including hearing from "*both* Parties[] whether venue is appropriate." App.307. The Bureau moved to transfer under 28 U.S.C. § 1404(a) on Thursday, March 21. App.310. Plaintiffs opposed on Monday, March 25. App.375.

Minutes later, Plaintiffs noticed an interlocutory appeal challenging the district court's failure to rule on their timetable. App.412-App.414. In this Court, they moved for an injunction pending appeal and an "immediate" administrative stay of the Rule. Mot. for Inj. Pending Appeal at 4, No. 24-10248, ECF No. 7. In Plaintiffs' view, the district court had "effectively denied" their request for a preliminary injunction when it declined to rule on their preliminary injunction motion by March 22 (15 days after Plaintiffs filed this suit) and sought briefing on venue on an extremely compressed timeline. *Id.* at 10. Consistent with this Court's instructions, the Bureau opposed that motion on Friday, March 29. *See* Opp'n to Mot. for Inj. Pending Appeal, No. 24-10248, ECF No. 56 (Inj. Opp'n).

On March 28, the district court transferred the case to D.D.C. under 28 U.S.C. § 1404(a). *See* Op. & Order at 7, Dist. Ct. Dkt. No. 67 (Transfer Op.). The court noted, among other considerations, that this case "chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia." *Id.* at 5. Indeed, "as far as" the court could "discern, not one of the banks

or credit card companies directly affected by the future Rule is located in the Fort Worth Division." *Id.* at 6-7. And, the court recognized, "[f]ederal courts have consistently cautioned against" endorsing efforts like Plaintiffs' to "pick and choose on a … whim where and how a lawsuit is filed." *Id.* at 5; *see also id.* at 5-6 (noting that discretion under § 1404(a) can be "properly exercised to discourage judge shopping"). The court transmitted the case to D.D.C. that same day. *See* Dist. Ct. Dkt. Entry of Mar. 28, 2024.

That night, Plaintiffs filed on the docket of their preliminary injunction appeal a motion to administratively stay the transfer. *See* Mot., No. 24-10248, ECF No. 47. The next morning, a panel assigned to that appeal administratively stayed the transfer until 10:00 AM on March 30. Less than an hour later, D.D.C. docketed the case. *See Chamber of Commerce v. CFPB*, No. 1:24-cv-295 (D.D.C.). Later that day, and before the administrative stay expired, Plaintiffs filed this petition for a writ of mandamus. Early on March 30, the panel in the preliminary injunction appeal extended the administrative stay of the transfer until 5:00 PM on April 2. *See* Order, No. 24-10248, ECF No. 62-1.

## LEGAL STANDARD

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes," and only a showing of "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will

8

justify granting a mandamus petition." *In re Deputy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (cleaned up). To show entitlement to such an extraordinary remedy, (1) petitioners must show a "clear and indisputable" right to the writ; (2) the court must be "satisfied that the writ is appropriate under the circumstances"; and (3) petitioners must show that they have "no other adequate means to attain the relief [they] desire[]." *Id.*

## ARGUMENT

The Court should deny Plaintiffs' petition because they cannot show a clear and indisputable right to a writ of mandamus ordering the district court to immediately request transfer back to Fort Worth from the District of Columbia. Nor can they show that the writ is appropriate under the circumstances here.

### I.    Plaintiffs do not have a clear and indisputable right to the writ.

Contrary to Plaintiffs' arguments, the district court had jurisdiction to transfer the case, and it acted well within its discretion in doing so.

### A.   The district court had jurisdiction to order the transfer.

Plaintiffs contend that they stripped the district court of jurisdiction to transfer their case by filing an appeal of a preliminary injunction decision that the court had not yet made. They're wrong: An invalid appeal—as Plaintiffs' appeal was—does not divest the district court of any jurisdiction at all. And even a valid appeal from a preliminary injunction decision would not have divested the court of jurisdiction to transfer the case.

### 1. The district court retained jurisdiction because there was no valid appeal.

Plaintiffs' premature appeal of the "denial" of their preliminary injunction motion did not divest the district court of *any* jurisdiction because that appeal is invalid. As this Court has made clear, "an appeal from an unappealable order does not divest a district court of subject matter jurisdiction." *Rutherford v. Harris Cnty.*, 197 F.3d 173, 190 n. 17 (5th Cir. 1999). Rather, a "district court loses jurisdiction" only over "matters which are *validly* on appeal." *Dayton Indep. Sch. Dist. v. U.S. Min. Prod. Co.*, 906 F.2d 1059, 1064 (5th Cir. 1990) (emphasis added). There is and was no valid appeal here. After the district court signaled it had concerns about venue, Plaintiffs rushed to tee up an appeal: They requested an expedited decision by March 22 (15 days after they had filed their preliminary injunction motion) and then appealed when the district court declined to rule on that timetable. As the Bureau has previously explained, that appeal is not proper. Inj. Opp'n 7-9, No. 24-10248.

Contrary to Plaintiffs' claims, they have not validly appealed an "effective denial" of their preliminary injunction motion—because the district court did not "effectively deny" their motion by rebuffing Plaintiffs' demands to rule within 15 days. Cases allowing appeals from "effective denials" involved significantly longer delays than the one here—three months in *Clarke v. Commodity Futures Trading Commission*, 74 F.4th 627, 635 (5th Cir. 2023); four months in *McCoy v.*

10

*Louisiana State Board of Education*, 332 F.2d 915, 917 (5th Cir. 1964); and over

eight months in *United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962). Here,

even at the time of this filing, it has still been less than *one* month since Plaintiffs

sought a preliminary injunction (on March 7).

      Nor is there anything special about this case that makes the need for relief so

urgent that the court's failure to act almost immediately amounts to an effective

denial. At bottom, Plaintiffs complain that large-card-issuer members have to

begin printing new disclosures before the May 14 effective date. But those

compliance costs are negligible in light of the enormous resources that affected

card issuers have. Inj. Opp'n 9-12, No. 24-10248. And the district court did not

effectively deny preliminary relief by refusing to drop everything to protect

Plaintiffs' members from those relatively minimal burdens. The court of appeals

would be overrun if plaintiffs could short-circuit district court review any time they

faced compliance costs.

      Nor do any other "circumstances of this case fit neatly within the[]

precedents" finding effective denials. *Contra* Reply ISO Mot. for Inj. at 5, No. 24-

10248, ECF No. 60. Here, as in *Clarke*, the court denied a request for expedited

rulings, but it is clear that denying such a request does not, in itself, amount to the

effective denial of a preliminary injunction. *Compare Clarke*, 74 F.4th at 635

(finding effective denial), *with June Med. Servs., LLC v. Phillips*, No. 22-30425, 2022 WL 4360593, at *1 (5th Cir. Sept. 28, 2022) (finding no effective denial).

Nor did the district court effectively deny preliminary relief by ordering additional briefing to address its concerns about venue. *Contra* Reply ISO Mot. for Inj. at 3, No. 24-10248, ECF No. 60. Unlike the lengthy delay resulting from "dilatory motions" in *Lynd*, 301 F.2d at 820, there is nothing "dilatory" about the district court ordering expedited briefing to address serious questions about whether venue was appropriate in the Northern District of Texas. *See* App.274-App.276, App.306-App.308.

Likewise, the district court did not effectively deny Plaintiffs' preliminary injunction motion by promptly transferring the case to D.D.C. The transfer merely passes the decision to that coordinate court,[1] which still has six weeks before the Rule's effective date. And that court can now decide the motion without sorting out the parties' dispute about whether venue was even proper in the Northern District of Texas—an issue that, in the Bureau's view, forecloses relief in the Northern District, but not in D.D.C., where all agree venue is proper.

---

[1] The decision to transfer is therefore wholly unlike the rulings found to be effective denials in *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 386-87 (5th Cir. 2009), where the district court's holding on a legal issue necessarily meant the court would deny a preliminary injunction, and *H.K. Porter Co., Inc. v. Metropolitan Dade County*, 650 F.2d 778, 782 n.7 (5th Cir. 1981), where a ruling "effectively foreclosed" the requested preliminary relief.

In short, Plaintiffs' appeal was not "valid," and the district court retained jurisdiction.[2]

### 2. Even a valid preliminary injunction appeal would not divest the district court of jurisdiction to rule on a transfer motion.

Even if there had been an appealable preliminary injunction decision from which Plaintiffs had validly appealed, that would not affect the district court's jurisdiction to rule on the motion to transfer venue. A "notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case; rather, it only divests the district court of jurisdiction over those aspects of the case on appeal." *Alice L.*, 492 F.3d at 564. Thus, a district court "may still proceed with matters not involved in the appeal." *Id*. at 564-65. That is what happened here. Plaintiffs' first appeal concerned their motion for a preliminary injunction. The district court could thus proceed with other matters not involving the preliminary injunction, including the motion to transfer venue.

---

[2] Plaintiffs contend (at 16) that their appeal divested the district court of jurisdiction even if this Court ultimately concludes that the preliminary injunction appeal was not valid. That contention is directly contrary to this Court's precedent. In *United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989), this Court held that an "appeal from a non-appealable order … does not render void for lack of jurisdiction acts of the trial court taken in the interval between filing of the notice and dismissal of the appeal." Thus, if this Court determines that the district court did not effectively deny Petitioners' motion for preliminary injunction, then there is no basis to void the district court's transfer order for lack of jurisdiction.

Plaintiffs argue otherwise for two reasons, neither of which is availing. First, they claim (at 12) that the district court lacked jurisdiction to transfer out of circuit because that "would frustrate this Court's ability to provide meaningful relief to [Plaintiffs] in their appeal." Not so. Plaintiffs will still have an opportunity to obtain meaningful relief in their appeal—just from the transferee circuit instead of this one. And Plaintiffs cite no case suggesting that what matters is the *particular court of appeals'* ability to provide relief, rather than the appellant's ability to obtain it.

Indeed, in the cases they cite, district courts lacked jurisdiction to take actions that would undermine any avenue for the appellant to obtain meaningful relief in their appeal. For instance, where a defendant appealed the denial of qualified immunity, the district court lost authority to order discovery on claims to which qualified immunity would apply because the appeal sought to vindicate the defendant's right to avoid all burdens of litigation. *Alice L.*, 492 F.3d at 563. So too, where a party appeals the denial of a motion to compel arbitration, the district court loses all jurisdiction because the appeal seeks to prevent proceedings from going forward in district court at all. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740-41 (2023). And where defendants sought appellate review of whether a federal statute even applied to them, the district court lacked jurisdiction to grant a motion to amend plaintiffs' complaint to drop all claims under that statute. *Dayton*, 906

14

F.2d at 1063. That would "alter the status of the case as it rests before the Court of Appeals" and deprive defendants of the opportunity to have that legal question settled. *Id*. In all of these cases, the district courts lacked jurisdiction to take action that would frustrate the opportunity for relief on appeal. That is not a problem here: Transferring the case does not frustrate the opportunity for relief; it just changes the court of appeals that can provide it. And Plaintiffs do not cite a single case holding that an appeal on a preliminary injunction divests the district court of jurisdiction to decide a motion to transfer.

Plaintiffs' second argument for why the district court did not have jurisdiction to resolve the motion to transfer fares no better. They assert (at 15) that the transfer order "is inextricably bound up in the appeal [because] it is relevant to a decision on Petitioners' claim of effective denial." Again, not so. Plaintiffs acknowledge that their appeal from the district court's purported "effective denial" of a preliminary injunction is based on the court "delaying a ruling on their fully-briefed … motion … to invite and then entertain briefing on a motion for discretionary transfer." Pet. 15. Noticeably absent from Plaintiffs' argument is any suggestion that the transfer order contributed to the effective denial—and understandably so since the transfer order was issued after Plaintiffs' appeal. Thus, the transfer order is not relevant in determining whether the events *leading up* to Plaintiffs' appeal constituted effective denial. Nor are the merits of the transfer

order relevant to the merits of the preliminary injunction motion. Whereas the transfer order was based on the Bureau's motion to transfer venue under Section 1404, the Bureau argued in its opposition to the preliminary injunction motion that venue was improper under Section 1406.

For these reasons as well, the district court retained jurisdiction to issue the transfer order.

### B.   The district court's decision to transfer this case was not a clear abuse of discretion.

The district court also appropriately exercised its discretion in granting the Bureau's motion to transfer. Section 1404 allows transfer "[f]or the convenience of parties and witnesses, in the interest of justice … to any other district or division where it might have been brought."[3] 28 U.S.C. § 1404(a). To determine whether transfer is convenient and in the interests of justice, courts in this Circuit consider eight factors—four public, four private. *Volkswagen II*, 545 F.3d at 315.

The district court methodically addressed those factors and determined transfer was warranted. *See* Transfer Op. 3-7. Underlying its analysis was a significant—and appropriate—concern about the at-best-attenuated ties between this litigation and the chosen venue. As the court noted, this case "chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the

---

[3] The district court determined, and Plaintiffs do not dispute, that this case could have been brought in D.D.C. Transfer Op. 3 (discussing 28 U.S.C. § 1391(e)).

District of Columbia." *Id.* at 5. And the challenged Rule, "as far as" the court could "discern," would not "directly affect" anyone in the Fort Worth Division, since not one of the affected large banks or credit unions is based there. *Id.* at 6-7. The district court thus held that this case "does not belong in the Northern District of Texas." *Id.* at 7.

Plaintiffs ask this Court to override that sound conclusion. The court should decline that extraordinary invitation. On mandamus review, this Court does not "replace" the district court's "exercise of discretion with [its] own." *Volkswagen II*, 545 F.3d at 312. Indeed, the Court will not grant mandamus even "to correct a mere abuse of discretion." *Id.* at 310. Rather, mandamus is appropriate only "to correct a clear abuse of discretion" that "produce[s] a patently erroneous result." *Id.* Plaintiffs say the district court's decision qualifies because it is inconsistent with recent guidance in *Clarke*, 94 F.4th at 502. But Plaintiffs misread *Clarke* and ignore the distinctions between the two cases. The district court did not abuse its discretion, let alone clearly, when it determined that this case does not belong in the Northern District of Texas.

### 1. *The public interest factors*

The public interest factors "move[d] the needle most toward transfer" for the district court. Transfer Op. 7. The court focused on two factors—court congestion

and local interests. Neither aspect of the decision was an abuse of discretion, clear or otherwise.

The court first determined that court congestion favors transfer because it "has a significantly busier docket" than D.D.C. Transfer Op. 4. Given Plaintiffs' continued "insistence that time is of the essence for this case," the court reasoned that D.D.C.'s ability to "facilitate a more expeditious resolution of this time-sensitive matter" favored transfer. *Id.* at 5. Plaintiffs do not dispute the district court's assessment of its own docket efficiency, nor its conclusion that D.D.C. could likely resolve this case faster.

Plaintiffs suggest (at 18) that reliance on this factor is inconsistent with *Clarke*, but they are mistaken. In *Clarke*, this Court found no fault with the district court's finding "that congestion favored transfer." 94 F.4th at 510. To be sure, *Clarke* went on to say that "transfer cannot be granted *solely* because of congestion." *Id.* at 515 (emphasis added). That is because "no factor is of dispositive weight," and congestion only favors transfer "somewhere else," not to any particular venue. *Id.* But, here, the court did not transfer based on congestion alone. Rather, it concluded that congestion favored transfer and two other factors favored transfer to D.D.C. specifically. Transfer Op. 3-7. That was entirely consistent with *Clarke. See, e.g., Doe v. Pub. Co. Acct. Oversight Bd.*, No. 3:23-cv-

0149-S, 2024 WL 1096546, at *7 (N.D. Tex. Mar. 13, 2024) (citing *Clarke* and

considering congestion).

The district court next concluded that the "local interest in having localized

interests decided at home" favored transfer to D.C. Transfer Op. 4-6. That

determination, too, fell comfortably within the court's discretion.[4] In particular, the

court noted that "[t]he Rule at issue in this case was promulgated in Washington

D.C., by government agencies stationed in Washington D.C., and by employees

who work in Washington D.C.," and that half the Plaintiffs are based in D.C.

Transfer Op. 6. On the other side of the balance, no localized interest favored the

Northern District of Texas. As the district court put it, there is no "particularized

injury in the Northern District of Texas"; at most, "there are customers of

businesses in the Northern District of Texas that will *potentially* feel the effects"—

but the same could be said for "every city." *Id.* at 5.

Neither of Plaintiffs' attacks on this reasoning hold water. First, Plaintiffs

wrongly insist that the court's analysis conflicts with *Clarke*. Pet. 19. In particular,

---

[4] While the Bureau stated in the district court that the local-interests factor was
only neutral, the district court did not accept that argument. The Bureau is
therefore not estopped from defending the court's alternative rationale on
mandamus review. *See Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595, 605 (5th
Cir. 2021) (application of judicial estoppel turns, in part, on "whether the party has
succeeded in persuading a court to accept that party's earlier position"); *Ford-
Evans v. United Space All. LLC*, 329 F. App'x 519, 525 (5th Cir. 2009) ("Judicial
estoppel is designed to prevent parties from contradicting a prior court
determination, not themselves." (cleaned up)).

they claim that, under *Clarke*, the local-interest factor must be neutral whenever the effects of a challenged agency action "would be felt by regulated parties" in both districts. *Id.* But *Clarke* does not hold that, in a rulemaking challenge, the local-interests factor looks only to the effects on regulated parties. If it were so limited, this factor would indeed be neutral: The Rule directly regulates only 30-35 large card issuers, none of which is based in the Northern District or in D.C. And those large card issuers have customers in both places (and, indeed, across the country).[5]

But *Clarke* does not limit the local-interest factor to the impacts on regulated entities. There, the district court had held that D.C. had a greater interest in a challenged regulatory action because the plaintiff-entities directly subject to the action were based there, while the plaintiffs based in Texas were the entities' customers, who would also be harmed. 94 F.4th at 510. The district court presumed that individual plaintiffs had less at stake than entity plaintiffs, so downplayed the formers' (and consequently Texas's) interest. The Fifth Circuit rejected that

---

[5] Plaintiffs say they will suffer disproportionate harm in Texas because two declarants—banks based in Utah and Delaware—have over ten percent of their total receivables in Texas. Pet. 19. Even if that were relevant to evaluating the local interests, any harm is not *disproportionate* given that Texas also has close to ten percent of the population. *See* U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More States Gain Population* (Dec. 19, 2023), https://www.census.gov/newsroom/press-releases/2023/population-trends-return-to-pre-pandemic-norms.html. Texas cannot have a greater interest just because more people live there.

approach and clarified that the local-interest factor focuses not on the parties, but on "the significant connections between a particular venue and the events that gave rise to a suit"—i.e., "the interest of *non-party citizens* in adjudicating the case." *Id.* at 511.

The district court here did not run afoul of that guidance when it found D.C. has a greater interest in this case than the Northern District of Texas. Throughout its analysis, the court focused on the events that gave rise to the litigation, not the parties—observing that a D.C.-based government agency had promulgated the challenged Rule in D.C. Transfer Op. 6. And contrary to Plaintiffs' "hyperbolic concerns" (*id.* at 6), that does not mean that local interests will always or even usually favor transfer to D.C. in rule challenges.[6] As the court recognized, rulemaking wasn't the *only* possibly relevant event, and a local interest might arise in a "jurisdiction[] where the impact [of the Rule] is uniquely and particularly felt." Transfer Op. 6. Plaintiffs just hadn't chosen a venue with such a local interest: "[A]s far as th[e] Court c[ould] discern, not one of the banks or credit card

---

[6] Indeed, Judge Pittman has both overseen APA challenges and sent them to non-D.C. venues. *See, e.g.*, *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-CV-00278-P, 2024 WL 965299, at *1 (N.D. Tex. Mar. 5, 2024) (reaching merits of APA challenge to small-business lending statute); *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023) (transferring APA challenge to regulations governing student-loan repayments but choosing W.D. Tex. over D.D.C.).

companies directly affected by the future Rule is located in the Fort Worth Division." *Id.* at 6-7.

Second, Plaintiffs say the district court's analysis wrongly "ignore[d] the location of a plaintiff with standing"—the Fort Worth Chamber of Commerce. Pet. 19. To start, this argument runs into the problem *Clarke* warned against: It focuses on the parties rather than the "events that gave rise" to the suit. The Fort Worth Chamber's residence in Fort Worth, of course, has no relation to any event giving rise to the suit here, as it is not itself affected by the Rule and the only affected issuer it identifies is based in Utah and does business nationwide. More significantly, Plaintiffs take at face value that the Fort Worth Chamber *is* a plaintiff with standing. That is highly contested. As the Bureau explained in the related appeal, the Fort Worth Chamber seeks associational standing to represent the interest of a Utah-bank member to charge late fees under the previous safe harbor regime. But associational standing requires that the litigation be germane to the organization's purposes. *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). And protecting the interests of an out-of-district card issuer to charge high late fees is not pertinent to the Fort Worth Chamber's stated purpose of improving the business climate in Fort Worth—where no large card issuers reside. *See* Inj. Opp'n 14-17, No. 24-10248.

Finally, a third public interest factor that the district court did not rely on—familiarity with governing law—supports transfer. The district court found this factor to be neutral because the Northern District of Texas is equally able to adjudicate APA matters as D.D.C. Transfer Op. 6. To be clear, there is no question that the Northern District of Texas is fully capable of adjudicating the claims here. But the "transfer factors are relative." *Clarke*, 94 F.4th at 510. And, as a forum, D.C. is more "familiar[ ]" with the APA, given that it is home to many federal agencies. *See, e.g.*, *Stewart v. Azar*, 308 F. Supp. 3d 239, 248 (D.D.C. 2018) (finding D.D.C.'s "experience with APA cases" weighed against transfer); *Adab v. U.S. Citizenship & Immigr. Servs.*, No. 2:14-cv-04597-CAS-AGRx, 2015 WL 6249563, at *6 (C.D. Cal. Feb. 9, 2015) (applying similar reasoning for transfer to D.D.C.). That familiarity matters in a case like this one, which involves not just meat-and-potatoes APA issues, *cf. TikTok*, 85 F.4th at 366, but also an uncommon issue about the use of confidential information in notice-and-comment rulemaking, which D.D.C. has some experience with, *see FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 119 (D.D.C. 2015); *NRDC v. Thomas*, 805 F.2d 410, 418 n.13 (D.C. Cir. 1986).

## 2. *The private interest factors*

The district court concluded that the private factors favored transfer as well. That, too, was not an abuse of discretion, let alone a clear one.

The district court concluded that the "fourth factor"—*i.e.*, "all other practical factors that might make a trial more expeditious and inexpensive"—favored transfer. Transfer Op. 3-4. In particular, the court concluded that D.D.C. was "more practical" given that eight of the ten lawyers—including six of Plaintiffs'—are based there. Given the travel required, the court determined that hearings would be more "expensive" in Fort Worth. That is undeniably true and undoubtably would make proceedings in D.C. more expeditious and inexpensive.

Plaintiffs take issue with the district court's rationale, citing precedent stating that "[t]he factor of 'location of counsel' is irrelevant and improper for consideration" in deciding a motion to transfer under § 1404. Pet. 21 (citing *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003)). But the case law does not establish so categorical a rule. Rather, in the cases Plaintiffs rely on, district courts had considered "location of counsel" as a relevant factor in and of itself—and that's what the Fifth Circuit disapproved. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("*Volkswagen I*"); Order on Transfer, *Scott v. Volkswagen AG*, No. 2:03-cv-218 (E.D. Tex. Feb. 18, 2004) (listing "location of counsel" as one of seven private interest factors) (*Volkswagen I* Order); *Horseshoe Ent.*, 337 F.3d at 433 (quoting district court decision listing "location of counsel" as freestanding factor). The court here, by contrast, clearly linked the location of counsel to

24

something that *should* be considered: "practical" factors "that might make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

And in both *Volkswagen I* and *Horseshoe Entertainment*, the location of counsel did not mean that proceedings would be less expensive or more expeditious. Far from it. In *Horseshoe Entertainment*, for example, "the plaintiff, the defendant and presumably the witnesses" were all in the potential transferee venue, while counsel was in another. 337 F.3d at 433. Likewise in *Volkswagen I*, Plaintiffs had filed the case in Marshall; potential fact witnesses were in San Antonio; and counsel were based in yet a third city, so would have to travel regardless. *See Volkswagen I* Order at 3. Here, the district court appropriately noted that the *only* people who might have to travel for this case are the lawyers—and the majority of them are based in D.C. That showed that proceedings would be more expeditious and inexpensive in D.C.—a factor well established as relevant in the § 1404(a) analysis.

### 3.  *The transfer decision*

The district court appropriately concluded that multiple factors favored transfer—including court congestion, D.C.'s stronger local interest, and the practical expense of bringing a Washington-based case in Texas. And it concluded that none favor the Northern District of Texas—a finding that Plaintiffs do not dispute. That is sufficient to establish good cause.

Plaintiffs urge otherwise, complaining that two of the factors the district court relied on do not actually favor transfer. Pet. 22. They are mistaken for the reasons explained above. And Plaintiffs notably do not contest that, if those factors *do* favor transfer, that would be enough to outweigh the (concededly) nonexistent factors favoring the Northern District.

Plaintiffs also ignore the fundamental concern animating the district court's determination that transfer would be in the interest of justice: to avoid countenancing unjustifiable forum-shopping. *See* Transfer Op. 6–7. As the district court noted, Plaintiffs' venue theory has no limiting principle: "Plaintiffs could find any Chamber of Commerce in any city of America and add them to this lawsuit in order to establish venue where they desire." Transfer Op. 5. The district court appropriately determined that limiting this kind of undisguised forum-shopping was relevant to the § 1404 analysis. Transfer Op. 6. *See also TikTok*, 85 F.4th at 357 (Section 1404 is a tool to prevent "the most blatant forum-shopping"); *Gardipee v. Petrol. Helicopters, Inc.*, 49 F. Supp. 2d 925, 933 (E.D. Tex. 1999) (Plaintiffs' forum choice given "little deference" where it "appears a blatant attempt to forum shop with little or no factual justification"). The district court's opinion amply demonstrates that transfer to a court with an actual connection to

this case is in the interest of justice, so there is no justification to replace that exercise of discretion with this Court's own.[7]

## II.   Issuance of the writ is not appropriate.

Plaintiffs also cannot satisfy the third element of the mandamus standard because issuance of the writ is not appropriate under the circumstances. *See Cheney*, 542 U.S. at 380. This Court has explained that "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. But Plaintiffs have not demonstrated that the issues raised by their petition "have an importance beyond the immediate case." *Id.* Nor could they. Their petition is simply an effort to reverse a case-specific (and discretionary) transfer decision with which they disagree—no "really extraordinary cause[]" that. *Cheney*, 542 U.S. at 380.

Borrowing language from earlier decisions of this Court, they argue that the writ is appropriate to "further instruct when transfer is—or, for that matter, is not—warranted in response to a § 1404(a) motion," given that "transfer decisions are rarely reviewed." Pet. 23 (cleaned up). But their argument blinks reality: even if

---

[7] Transfer also was not patently erroneous because venue was never proper in the Northern District of Texas in the first place. As the Bureau explained in the related appeal, the Fort Worth Chamber does not have standing and so cannot support venue under 28 U.S.C. § 1391(e).

guideposts in this area were once lacking, *see Volkswagen II*, 545 F.3d at 319, there is no dearth of guidance today on how to apply the § 1404 factors. Just consider the last two years. In March 2024, this Court issued the writ in *Clarke*. 94 F.4th 502. In October 2023, it issued the writ in *Tik Tok*. 85 F.4th 352. And in April 2022, it issued the writ in *Defense Distributed*. 30 F.4th 414.[8]

Accepting Plaintiffs' invitation to issue a mandamus petition here—based on their run-of-the-mill objections to the experienced district court's exercise of discretion—would transform the "drastic and extraordinary remedy reserved for really extraordinary causes," *Cheney*, 542 U.S. at 380 (cleaned up), into the *de rigueur* remedy for everyday complaints about a judge's transfer decision. This Court's mandamus-transfer docket would explode—and for no good reason. There is nothing "really extraordinary" about transferring a case brought by three Washington, D.C. plaintiffs (along with three non-D.C. plaintiffs) against a defendant headquartered in Washington, D.C. to challenge a rule issued in Washington, D.C. from Fort Worth to Washington, D.C.—especially when that rule doesn't apply to a single entity based in Fort Worth. "[O]ne of the most potent

---

[8] Moreover, a court need not issue the writ to provide guidance. For example, in *In re Planned Parenthood Federation of America, Inc*., 52 F.4th 625 (5th Cir. 2022), the Court declined to issue the writ to override a district court's refusal to transfer a case under § 1404. That decision, too, provides direction on how the § 1404 factors should be applied. Indeed, Plaintiffs have cited it in this litigation. *See* Transfer Opp'n at 4, Dist. Ct. Dkt. No. 55.

weapons in the judicial arsenal," *id.*, should not be aimed so indiscriminately, and it certainly should not be leveled at the decision here.

To bolster their argument, Plaintiffs contend that this "case in particular involves issues of importance beyond the immediate case." Pet. 23 (cleaned up). Specifically, they maintain that "it is hard to see how any APA challenges would remain in this Circuit if court congestion, the location of lawyers, and that D.C. should be the epicenter of regulatory challenges justifies transfer in the mine-run of cases." *Id.* (cleaned up). Not really. Many APA cases are litigated outside Washington, D.C.—including in this Circuit—and appropriately so. *See, e.g., Cook Cnty., Illinois v. Wolf*, 498 F. Supp. 3d 999 (N.D. Ill. 2020); *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021); *Texas v. Becerra*, 667 F. Supp. 3d 252 (N.D. Tex. 2023). What Plaintiffs are missing—but what this Court has already made pellucidly clear—is that the decision of whether to transfer involves a case-specific balancing of the relevant factors. *In re TikTok*, 85 F.4th at 358 ("No factor is of dispositive weight, and we have cautioned against a raw counting of the factors that weighs each the same." (cleaned up)). And, here, the factors identified by the district court justify transfer because of the lack of the connection between this case and the Northern District of Texas. *See* above at I.B. We wouldn't be here, for example, if there were a large-card issuer based in Fort Worth that had sued under the APA. Plaintiffs' hyperbolic argument fails.

29

Plaintiffs' jurisdiction-related argument is similarly unavailing. Plaintiffs

contend that this "case in particular involves issues of importance beyond the

immediate case," Pet. 23, because district courts need to be instructed that they

cannot "frustrate this Court's review of denials of preliminary injunctions by

simply transferring the case after an appeal is lodged." *Id.* at 24. In fact, as

explained above, Plaintiffs jurisdictional argument is a dud. *See* § I.A. In any

event, district courts undoubtedly know that "[a] notice of appeal from an

interlocutory order . . . divests the district court of jurisdiction over those aspects of

the case on appeal." *Alice L.*, 492 F.3d at 564. And the Bureau is unaware of an

epidemic of district judges transferring cases after a plaintiff has tried to invoke the

jurisdiction of this Court based not on an actual denial of its request for a

preliminary injunction, but on the fact that a court hadn't granted the request for a

preliminary injunction within three weeks. The "supervisory" ends of mandamus,

*In re Volkswagen*, 545 F.3d at 319, then, do not justify issuance of the writ to

instruct district courts on this one-off jurisdictional issue created by Plaintiffs

idiosyncratic litigation choices. *See, e.g., In re Beazley Ins. Co.*, No. 09-20005,

2009 WL 7361370, at *6 (5th Cir. May 4, 2009) (determining mandamus was not

appropriate because of the fact-specific nature of the issue).

Finally, Plaintiffs insist that the writ is warranted because "the constitutional

claims presented by this case have importance beyond the immediate case." Pet.

24.[9] This argument fails because Plaintiffs ask the wrong question and give the wrong answer. The proper question is whether the issues at stake in the *mandamus petition*, not the case as a whole, have "importance beyond the immediate case." *In re Volkswagen of Am.*, 545 F.3d at 319. When the issues at stake in the mandamus petition have such importance, then given the "supervisory [ ] nature" of mandamus, issuance of the writ is warranted to give district courts guidance. *Id.* Thus, in *Volkswagen II*, 545 F.3d at 319, *Clarke*, 94 F.4th 516, and *TikTok*, 85 F.4th 367, the courts assessed importance based on the issues at stake in the mandamus petitions.[10] In any event, it is unclear why the constitutional claim here would have "importance beyond" this case given that this Court has already resolved the relevant constitutional question and the Supreme Court will soon address it.

A writ of mandamus is not appropriate under the circumstances.

## CONCLUSION

The Court should deny the petition.

---

[9] Notwithstanding Plaintiffs' arguments in this section, Pet. 24, the Bureau has not conceded (with respect to Plaintiffs' motions for injunctive relief) that Plaintiffs are likely to succeed on the merits. Inj. Opp'n, No. 24-10248.

[10] *Defense Distributed*, 30 F.4th at 426-27, mentions constitutional issues that were not the subject of the mandamus petition, but it does so apparently to explain the importance of addressing the litigation tactics implicated by the petition.

Dated:  April 2, 2024

Respectfully submitted,

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock
  *Counsel*
Joseph Frisone
Justin M. Sandberg
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

On April 2, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Counsel for all participants are registered CM/ECF users, and service on them will be accomplished by the CM/ECF system.

_/s/ Stephanie B. Garlock_
Stephanie B. Garlock

**CERTIFICATE OF COMPLIANCE**

This petition complies with the type-volume limitation in Federal Rule of Appellate Procedure 21. It contains 7,656 words, excluding the portions exempted by Rule 32(f). This document complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 365 in Times New Roman, a proportionally spaced typeface.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock