

**COMMITTEE ON CODES OF CONDUCT
OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES**

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
515 RUSK STREET, SUITE 12014
HOUSTON, TEXAS 77002

JUDGE JENNIFER W. ELROD
CHAIR

JUDGE HENRY E. AUTREY
JUDGE STANLEY A. BASTIAN
JUDGE RAYMOND T. CHEN
JUDGE D. SIMS CRAWFORD
JUDGE DABNEY FRIEDRICH
JUDGE JEFFREY R. HOWARD
JUDGE DENNIS JACOBS
JUDGE ROBERT J. JONKER
JUDGE GERALD A. MCHUGH, JR.
JUDGE HOWARD C. NIELSON, JR.
JUDGE WILLIAM M. RAY II
JUDGE NANCY J. ROSENSTENGEL
JUDGE THOMAS D. SCHROEDER

Tel (713) 250-7590
Fax (713) 250-7599
5THCIRCUIT_COCC@CA5.USCOURTS.GOV

ROBERT P. DEYLING
COUNSEL
Tel (202) 502-1100
Fax (202) 502-1033
ROBERT_DEYLING@AO.USCOURTS.GOV

April 16, 2024

Honorable Don Willett
United States Court of Appeals
F. Edward Hebert Federal Building
600 South Maestri Place
New Orleans, LA 70130

Re:   Docket No. 2773

Dear Judge Willett:

Thank you for your inquiry. The Committee on Codes of Conduct (the "Committee") is pleased to respond. Please note that this response is advisory only and based solely on the judgment of the Committee members. Your inquiry is governed by the Code of Conduct for United States Judges (the "Code"). Many of the proscriptions of the Code are cast in general terms, and "[t]he Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions." Commentary to Canon 1.

You have asked for a private opinion regarding a recusal issue which has arisen in two appeals before your court that involve a challenge by certain plaintiffs, such as the Chamber of Commerce, against the Consumer Finance Protection Bureau regarding the CFPB's recently announced rule capping late fees on credit card accounts. As explained below, the Committee does not believe that you must recuse from either of the two pending appeals before your court unless you determine that you have an interest that could be substantially affected by the outcome of the litigation.

One action before your court (the "Fifth Circuit") involves the constitutionality of the new rules announced by the CFPB (the "Underlying Action") and whether the District Court for the Northern District of Texas erred in not granting a preliminary injunction against the implementation of the rule; the second appeal came from a mandamus proceeding centered on a

venue and jurisdictional dispute (the "Mandamus Action") as to whether the case should be transferred to the District Court for the District of Columbia. As to the Mandamus Action, a panel of the Fifth Circuit has already issued a decision, which you authored, that the district court should not have transferred the case because the Underlying Action was already under appeal. Relatedly, a panel is set to consider oral argument later this month on the appeal in the Underlying Action regarding the preliminary injunction issue.

You indicated that one of your sons owns stock in Citigroup worth approximately $2000 within his Coverdell Education Savings Account. A Coverdell ESA is a trust or custodial account set up solely for paying qualified education expenses for the designated beneficiary, in this case – your son. (Indeed, his brother also had Citigroup stock in his separate Coverdell ESA, which was recently sold to help pay for his college expenses). Citigroup is not a party in either of these two cases.

Fifth Circuit rules mandate that parties appearing before it file a Certificate of Interested Persons (the "Certificate"), on which they must indicate "all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation." 5th Cir. R. 28.2.1. You indicated that you and your colleagues place the burden on counsel to indicate on this Certificate all persons and entities known to have a financial interest in the case and that you rely upon the same. The Plaintiffs here listed only the named parties in these two cases as interested persons; neither CFPB nor its counsel filed a Certificate in either appeal and did not initially object to the Certificates filed by the Plaintiffs.

However, three days after the panel released its opinion in the Mandamus Action, which concluded that the case should not have been transferred due to the pending appeal on the preliminary injunction issue, the CFPB argued by letter in both matters that "large credit card issuers" (such as Citigroup) are interested persons. The court then directed the parties to file expedited letter briefs on the issue, specifically including a discussion of Canon 3(C)(1)(c) of the Code, which states that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge knows that the judge, individually or as a fiduciary, or the judge's . . . minor child residing in the judge's household has a financial interest in the subject matter in controversy . . . or any other interest that could be affected substantially by the outcome of the proceeding."

As we understand it, the CFPB takes the position in its briefing that any judge who owns (directly or through a close family member) stock in a large credit card issuer (such as Citigroup) necessarily (1) has a financial interest in the subject matter in controversy or, at the very least, (2) has an "interest that could be affected substantially by the outcome of the proceeding," thus triggering mandatory disqualification under Canon 3(C)(1)(c) even though the company (Citigroup) is not a party to the case. In past guidance, the Committee has not defined financial interest so broadly. Any impact on the stock is, at best, indirect and contingent. In some respects, the situation you describe is analogous to a judge who owns bank stock and is assigned to preside over the trial of a defendant charged with robbing that very bank. In that situation, the bank has an interest in restitution as a crime victim, but the commentary to the Code makes it clear that a judge in such a case does not have an interest in the "subject matter" of the trial. *See* Commentary

to Canon 3(C)(1)(c) ("In a criminal proceeding, a victim entitled to restitution is not, within the meaning of this Canon, a party to the proceeding or the subject matter in controversy.").

Similarly, here, even if it is true that the value of your son's stock could be affected by market forces based upon the outcome of this case, that does not by itself convert your son's stock ownership to a direct financial interest requiring recusal. For example, the Committee has previously advised that where a trade association appears as a party, a judge owning a small percentage of stock in its members need only recuse if the value of the judge's interest could be substantially affected. Advisory Op. No. 49. The Committee believes recusal under this provision is required only if the judge concludes that the outcome of the proceeding could substantially affect the value of the company's stock owned by the judge or the judge's family in the non-party. *See* Advisory Op. No. 57 (which applies the standard of whether the outcome would "substantially affect the value of the interest" to non-parties).

For similar reasons, the Committee does not believe that recusal is automatically required under the general standard of Canon 3(C)(1). The issue is whether ownership of stock in a non-party large credit card issuer is enough to question whether a "judge's impartiality might reasonably be questioned." The Code links the mandate of recusal to situations where a judge's impartiality may "reasonably be questioned," not to every situation in which a litigant raises the issue. This makes sense because if a judge had to recuse each and every time a litigant raises a question of impartiality, simply making a claim of unfairness would be a fait accompli. The judicial system could not function effectively under such a standard, and that is exactly why the Code imposes a standard of reasonableness. In a situation like this, relevant factors in assessing reasonableness include the overall size of the judge's stockholding in the non-party and the potential impact of the outcome of the litigation on the value of that interest, assuming that can even be determined. And the fact that the original Certificate did not identify large credit card companies as interested non-parties may have some bearing on reasonableness.

As a Committee, we cannot evaluate whether a particular judge's interest in a large credit card issuer who is not a party could nevertheless be affected substantially by this litigation. That judgment will necessarily depend on issues intrinsic to the litigation, including the relief sought and the likelihood of success on any such requested relief, plus a host of individual factors particular to each judge. We believe that you are not only in the best position to make that call, but also the person on whom the Code ultimately puts that responsibility. We do note, however, that more than mere speculation about the potential effect of litigation on a judge's ownership interest in a non-party would normally be necessary to support a conclusion requiring recusal. *See also* Advisory Op. No. 69 ("Ultimately, an individual judge must decide the potential effect on the interest. The key inquiry is not the size of the interest, but the size of the impact on the interest.")

The Committee also keeps in mind the fact that the Code imposes on all judges a duty to sit and hear assigned cases to completion, absent a legitimate basis for disqualification. As we have previously advised, frequent recusal after case assignment without a legitimate bias for recusal needlessly delays the judicial process, raising concerns under Canon 3(A)(5) ("A judge should dispose promptly of the business of the court."). A judge's retention of preferred cases, while avoiding matters the judge subjectively deems less desirable, may create the appearance of a biased tribunal, and may engender a perception of favoritism.

The Committee treats all inquiries and responses as confidential and will disclose information about them only in the narrow circumstances described in the Committee's confidentiality policy. *See* Guide to Judiciary Policy, Vol. 2B, Ch. 1, §130. As the recipient of this letter, you may use it as you please. Also, please note that the Chair of this Committee, Judge Jennifer Walker Elrod of the Fifth Circuit, has not participated in preparation of this opinion.

We hope this response has been helpful. If you have any further questions, please do not hesitate to contact the Committee.

For the Committee,

Gerald Austin McHugh
Acting Chair