No. 24-10266

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

IN RE CHAMBER OF COMMERCE

On Petition for a Writ of Mandamus to the United States District Court
For the Northern District of Texas, Fort Worth Division
Case No. 4:24-cv-213

## RESPONDENTS' PETITION FOR PANEL REHEARING

Seth Frotman
 *General Counsel*
Steven Y. Bressler
 *Deputy General Counsel*
Kristin Bateman
 *Assistant General Counsel*
Joseph Frisone
Justin M. Sandberg
 *Senior Counsel*
Stephanie B. Garlock
 *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Introduction and Statement of the Issues ................................................. 1

Argument .................................................................................................. 3

    I.    The panel opinion's conclusion that the district court effectively denied Plaintiffs' preliminary injunction motion rested on flawed factual premises. ............................................................................ 3

    II.   The panel opinion's approach will be unworkable for courts in practice. ................................................................................... 7

Conclusion ............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Com. Park at DFW Freeport v. Mardian Constr. Co.*,
  729 F.2d 334 (5th Cir. 1984) ................................................................. 12

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ................................................................. 10

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ................................................................. 5

*Montano v. Texas*,
  867 F.3d 540 (5th Cir. 2017) ................................................................. 11

*Willey v. Harris Cnty. Dist. Att'y*,
  831 F. App'x 132 (5th Cir. 2020) .................................................. 8, 9, 11

**Regulations**

12 C.F.R. § 1026.6(b)(3) ........................................................................... 4

12 C.F.R. § 1026.9(c)(2)(v)(A) ................................................................. 4

**Other Authorities**

11A Wright & Miller, Federal Practice & Procedure § 2953 (3d ed. Apr. 2023 update) ................................................................................................. 7

16 Wright & Miller, Federal Practice & Procedure § 3924.1 (3d. ed. 2012) ........ 5, 8

## INTRODUCTION AND STATEMENT OF THE ISSUES

In their petition for a writ of mandamus, Plaintiffs—a group of trade associations representing the interests of credit card issuers—asked this Court to intervene and undo the district court's decision to transfer their challenge to a Consumer Financial Protection Bureau rulemaking to the District of Columbia. In its recent panel opinion, this Court granted that request on the ground that Plaintiffs' appeal of the district court's failure to act quickly enough on their preliminary injunction motion had divested that court of jurisdiction to transfer. In other words, the panel opinion's decision turned entirely on its determination that the district court's actions constituted an effective denial of Plaintiffs' preliminary injunction motion.

That determination was factually flawed and, if accepted as precedent, would create an unworkable standard for district courts handling requests for preliminary relief. As explained below, the panel opinion misconstrued both the requirements of the Late Fee Rule and the arguments Plaintiffs have made to challenge it. While Plaintiffs claimed they needed a decision by March 29 (and, indeed, had demanded that the district court give its answer a full week in advance), that was neither true nor supported by the record. The Rule did not require large card issuers to do anything by March 29—Plaintiffs merely claimed that some large card issuers would *want* to take action by then—so there was no

1

emergency that would render the district court's failure to act by that date an effective denial. Because the panel held otherwise, its opinion would upend this Court's approach to effective denials and create untenable uncertainty for district judges facing even the flimsiest requests for extreme expedition. As a result, district courts will have less ability to manage their dockets—including to evaluate significant threshold issues in cases with pending preliminary injunction requests—and this Court could face a spate of effective-denial appeals before district courts have had the appropriate chance to weigh in.

Respondents the Consumer Financial Protection Bureau and Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau (collectively, the Bureau), therefore respectfully urge the Court to grant panel rehearing on the following issues:

1. Whether the panel opinion's determination that the district court effectively denied Plaintiffs' preliminary injunction motion rested on key factual errors.

2. Whether the panel opinion's approach improperly interferes with district courts' authority to manage their own dockets, leading to practical and legal difficulties in this and other cases.

# ARGUMENT

I. **The panel opinion's conclusion that the district court effectively denied Plaintiffs' preliminary injunction motion rested on flawed factual premises.**

The panel concluded that the district court effectively denied Plaintiffs' motion for a preliminary injunction—and therefore Plaintiffs had lodged a valid interlocutory appeal of that denial—because "[t]he context of this case reveals that the district court did not act promptly" enough to provide effective relief. Panel Op. at 6-7. The panel opinion, however, fundamentally misunderstood the context of this case—including the requirements of the Bureau's Late Fee Rule and the arguments Plaintiffs have made to challenge it. Because several factual errors underlie the panel's conclusion that there was an effective denial, reconsideration is warranted.

Most significantly, the panel opinion relied on the premise that, "[t]o comply with the Final Rule, credit card issuers needed to have printed and distributed disclosure materials about the late fees to customers by March 29." Panel Op. at 7; *see also id.* at 3. That premise is incorrect. As the Bureau has explained—and Plaintiffs concede—the Late Fee Rule did not in any way require large card issuers to send notices by March 29.[1] Although TILA and Regulation Z require notices 45

---

[1] The Bureau's discussion of this argument can be found in its opposition to Plaintiffs' request for an injunction pending appeal, in the companion proceeding

3

days in advance of certain changes in terms, no advance notice is required for the only change that the Late Fee Rule could possibly require—a reduction in the maximum late fee. *See* 12 C.F.R. § 1026.9(c)(2)(v)(A); *see also id.* § 1026.6(b)(3).

Plaintiffs don't even claim otherwise. They say only that if large card issuer members "*wish* to contemporaneously change other card terms to mitigate the substantial decrease in late fees" starting on May 14, they would have to send notice by March 29. Inj. Mot. at 11 (emphasis added). It is undisputed that the Rule does not require large card issuers to change other terms at all—and certainly not by the May 14 effective date. Plaintiffs therefore did not need a ruling by March 29 "so as to avoid substantial compliance with the new rule." *Contra* Panel Op. at 8. And the panel erred when it relied entirely on that supposedly looming March 29 deadline to conclude that there had been an effective denial.

Beyond Plaintiffs' manufactured late-March deadline, the panel misconstrued several other aspects of the factual record and procedural history in

---

challenging the district court's purported effective denial of the preliminary injunction motion. *See* Inj. Opp'n at 10, ECF No. 56, No. 24-10248. The Bureau did not address this question specifically in its mandamus briefing because Plaintiffs did not raise it; in this proceeding, Plaintiffs only mentioned the supposed March 29 deadline in passing in the background section of their brief. *Compare* Mandamus Pet. at 6, ECF No. 5, No. 24-10266, *with* Emergency Mot. for Inj. Pending Appeal at 11, ECF No. 7, No. 24-10248 ("Inj. Mot."). The panel therefore further erred in concluding that the Bureau failed to contest "what the Final Rule requires credit card issuers to do by the effective date." Panel Op. at 9.

4

deciding that the district court had effectively denied Plaintiffs' preliminary injunction motion by not ruling quickly enough.

*First*, the panel suggested that the district court had not acted promptly enough to "preserv[e] the opportunity for *effective* permanent relief." Panel Op. at 7 (quoting 16 Wright & Miller, Federal Practice & Procedure § 3924.1 (3d ed.)). That is not true. Plaintiffs claim that they need "urgent relief" before the Rule's effective date because they otherwise plan to spend money to print required new account disclosures in advance of the May 14 effective date (and to print *optional* change-in-terms notices about the other fees and rates they may choose to raise).[2] *See* Inj. Mot. at 10. But whether or not Plaintiffs are saved from the cost of preparing new account documents for distribution after the May 14 effective date, a court could still effectively grant them the permanent relief they seek— reinstatement of the old rule allowing higher late fees under the safe harbor.

---

[2] In any event, those printing costs do not constitute irreparable harm that could support a preliminary injunction. Card issuers cannot rely on the cost of printing change-in-terms notices for *other* fees and rates—which the Rule does not require them to raise, either before or after May 14. And because TILA and Regulation Z already require card issuers to print and send disclosures for new applications and accounts, the only irreparable harm even conceivably caused by the Rule is any *additional* cost incurred to change those disclosures going forward, over and above the baseline. Plaintiffs have not established that these additional printing costs are "more than de minimis," as required to constitute irreparable harm. *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

*Second*, and relatedly, the panel determined that Plaintiffs' preliminary injunction motion needed to be decided quickly because Plaintiffs had "attest[ed] that providing notice [to consumers] 'typically takes 4 months.'" Panel Op. at 7. But as just discussed, large card issuers did not need to provide any advance notice to existing customers about the upcoming *reduction* in late fees. While card issuers would need to prepare updated applications and account-opening disclosures with any new maximum late fee starting on the May 14 effective date, Plaintiffs never attested that it would take four months to do so. They offered only an unsworn comment letter a third-party service provider submitted in response to the proposed rule, which stated that the company typically *requests* four months' notice for modifications of account disclosures. *See* App.208; *see also* Inj. Opp'n at 11 (explaining why, in any event, commenter's predictions related to proposed rule may not hold true for final rule, which applies to far fewer issuers). And Plaintiffs offer no competent evidence that card issuers actually need so much time to change the dollar amount on the late-fee line of their account-opening disclosures. Indeed, although Plaintiffs submitted several declarations from executives at large card issuers, not one attested that they couldn't prepare any required new documents by the effective date. *See* App.150-App.151, App.190-App.192, App.202-App.204.

*Third*, the panel opinion suggested that Plaintiffs were entitled to a quick resolution of their preliminary injunction motion because they had "acted

6

diligently." Panel Op. at 7. But Plaintiffs specifically chose not to move for a temporary restraining order—the mechanism the Federal Rules provide to enjoin activity until adequate briefing and hearing on a preliminary injunction motion can be held. *See* 11A Wright & Miller, Federal Practice & Procedure § 2953 (3d ed. Apr. 2023 update).

*Fourth*, the panel erred in concluding that "[o]nce a transfer occurred, [Plaintiffs] certainly could not obtain relief . . . in time to avoid substantial compliance with the new rule." Panel Op. at 11. The Rule does not require compliance until May 14. At the time of the transfer order, there were still more than 6 weeks until the Rule's May 14 effective date—leaving Plaintiffs ample time to "obtain relief" in the transferee court.

For all these reasons, the panel's determination that the district court had effectively denied Plaintiffs' preliminary injunction motion—such that this Court had jurisdiction over their appeal of that denial—rests on flawed factual premises. The panel should reconsider its analysis.

II. **The panel opinion's approach will be unworkable for courts in practice.**

The Court's new standard for assessing whether a preliminary injunction motion has been effectively denied is, as a practical matter, unworkable.

District court judges are busy and some—such as those in Forth Worth—are very busy. *See* App.308 (explaining that the Fort Worth Division has no more

7

judges than divisions with populations about 1/10 of its size). Prior to the panel opinion, busy district court judges could effectively triage preliminary injunction motions, assessing the need to act on them as opposed to working on the other important civil, criminal, and immigration matters. They could make these workflow assessments effectively (and quickly) because the standard was clear and the discretion was theirs: an "appeal cannot be achieved simply by asserting that the trial court has failed to act as promptly as wished by a party seeking an injunction"; rather "jurisdiction should be asserted only on a strong showing of apparent need," and the "trial court, moreover, must bear primary responsibility for managing these problems as matters of discretion." *Willey v. Harris Cnty. Dist. Att'y*, 831 F. App'x 132, 133 (5th Cir. 2020) (per curiam) (cleaned up) (quoting 16 Wright & Miller, Federal Practice & Procedure § 3924.1 (3d. ed. 2012)).

But the panel opinion would change things. For starters, the standard is no longer clear. A "strong showing of apparent need" is no longer required, as demonstrated by the fact that Plaintiffs secured jurisdiction even though the March 29 deadline was illusory: nothing needed to be accomplished by March 29 for Plaintiffs to get effective relief. *See* § I above. Plaintiffs did not need this Court to have jurisdiction; they wanted it to. Indeed, the time Plaintiffs have spent litigating their preliminary injunction appeal in this Court could have equally been spent resolving the issue in the district court—either in Texas or, post-transfer, in D.C.

And the theory underlying Plaintiffs' claim of jurisdiction has no stopping point. If the large card issuers decided that, absent an injunction, they wanted to start the process of offsetting any future decline in late fee revenue even earlier—say, three days after they filed their motion—would the district court have to decide motion in the span of a long weekend? It seems so. But if a "strong showing of apparent need" is no longer required to secure jurisdiction, then what showing is required? No clear answer is apparent from the panel opinion (but the implication is that motivated plaintiffs can set artificial deadlines to which district courts must adhere.).

And not only has the standard changed, but it also appears that the "primary responsibility" for managing this question no longer rests with the trial court. The experienced district judge made an informed assessment of the need for TRO-like expedition in the handling of Plaintiffs' motion for a preliminary injunction, issuing a written order rejecting Plaintiffs' request. App.307-App.308. This Court, however, replaced its judgment for the district court's regarding the need for expedition, without establishing that the district court abused its discretion under the *Willey* standard. *See* § I above explaining how panel erred in determining that Plaintiffs needed a decision by March 29).

Taken together, the dilution of the apparent-need standard and of the deference afforded district courts will create uncertainty about when the "effective

9

denial" of a preliminary injunction occurs. And this uncertainty will have costs. It will threaten to disrupt the orderly handling of district court matters, requiring district judges to take up flimsy requests for extreme expedition by aggressive and well-funded Plaintiffs, at the expense of other important matters. If a district court does not take up a preliminary injunction motion on the schedule demanded by a plaintiff, then the plaintiff could file an appeal based on an alleged effective denial, thereby delivering the case to a jurisdictional twilight zone: In the post-*Fort Worth Chamber* world, the district court cannot be sure—or even reasonably sure—of whether it has jurisdiction in this context. And once the case enters this twilight zone, district court proceedings, or at least those in any way connected to the preliminary injunction motion, will grind to a halt. If they don't, then the district court would risk running afoul of this Court's admonition not to "alter the status of the case as it rests before the Court of Appeals." Panel Op. at 11. Crucially, the district court would not (as a practical matter) be able to resolve pending motions to transfer, notwithstanding this Court's instruction that "disposition of a § 1404(a) motion should take a top priority in the handling of a case." *In re TikTok, Inc.*, 85 F.4th 352, 362 (5th Cir. 2023) (cleaned up). This dynamic would be a boon for forum-shopping plaintiffs, allowing them, through a conjured emergency, to force a decision on a preliminary injunction motion under the law of a venue that should not even apply.

Importantly, a district court's rush to decide a preliminary injunction motion will not only distort the district court's docket management decisions—imposing costs on other litigants who could otherwise see decisions in their cases—but could also negatively impact the thoroughness of the district court's decision on the motion. Specifically, to avoid the negative consequence of the new, vaguer effective denial standard, district courts may have to churn out decisions with undue haste, depriving themselves of the time needed to fully consider the issues. This runs contrary to this Court's recognition in *Willey* that "[a]dequate time must be allowed for reasoned consideration and disposition in light of the complexities of the case [and] the urgency of preliminary relief as a means of preserving the opportunity for effective permanent relief." 831 F. App'x at 132.

Finally, district courts will be incentivized to act (too) quickly to protect this Court from an array of half-cocked "effective denial" appeals—because, to be clear, the costs of the new regime will also be visited on this Court, and not just the district courts. Indeed, not only could this Court see an uptick in preliminary injunction appeals on this new, fuzzier effective denial theory, but the appeals will be lacking district court consideration. Review by the district court is always important, as this court is "a court of review, not of first view." *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017). But the lack of a district court record will be particularly troublesome on review of preliminary injunction motions that present

11

factual disputes. In those cases, the appeals precipitated by this new, laxer standard will serve to signal the movant's desire for a quick resolution. But they will do little else. The motions will remain unresolved until they return to district court because this Court cannot take evidence and resolve credibility disputes. *See, e.g., Com. Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 341 (5th Cir. 1984). Thus, either this Court will face a wave of new effective denial appeals (many of which may be ill-suited for resolution in the court of appeals), or district courts will have to act with haste to head them off—at the potential cost of other matters on the docket and thoroughness of their decisions.

## CONCLUSION

For all these reasons, the panel should grant the petition for panel rehearing, reconsider its mandamus opinion, and deny the petition for a writ of mandamus.

Dated: April 18, 2024

Respectfully submitted,

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*

/s/ Stephanie B. Garlock
Stephanie B. Garlock
  *Counsel*
Joseph Frisone
Justin M. Sandberg

*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

*Counsel for Respondents*

# CERTIFICATE OF SERVICE

On April 18, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Counsel for all participants are registered CM/ECF users, and service on them will be accomplished by the CM/ECF system.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock

**CERTIFICATE OF COMPLIANCE**

This petition complies with the type-volume limitation in Federal Rule of Appellate Procedure 40(b)(1) and Fifth Circuit Rule 40.3 because it contains 2,864 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 365 in Times New Roman, a proportionally spaced typeface.

/s/ *Stephanie B. Garlock*
Stephanie B. Garlock