**CASE NO. 24-10266**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN RE CHAMBER OF COMMERCE,

*On Petition for Writ of Mandamus to the United States District Court for the Northern District of Texas, Fort Worth Division*

**RESPONSE TO PETITION FOR PANEL REHEARING**

Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

*COUNSEL FOR PETITIONERS*

Thomas Pinder
D.C. Bar No. 451114
tpinder@aba.com
Andrew Doersam
D.C. Bar No. 1779883
adoersam@aba.com
AMERICAN BANKERS
ASSOCIATION
1333 New Hampshire Ave. NW
Washington, DC 20036

***COUNSEL FOR AMERICAN
BANKERS ASSOCIATION***

Tara S. Morrissey
D.C. Bar No. 991019
TMorrissey@uschamber.com
Maria C. Monaghan
D.C. Bar No. 90002227
mmonaghan@uschamber.com
U.S. CHAMBER LITIGATION
CENTER
1615 H Street NW
Washington, DC 20062

***COUNSEL FOR CHAMBER OF
COMMERCE OF THE UNITED
STATES OF AMERICA***

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................1

Argument............................................................................................3

    I.    The panel properly concluded that there was a legitimate basis for urgency. ..............................................................................3

    II.   The panel's approach is workable.....................................................10

Conclusion .......................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. v. Lynd*, 301 F.2d 818 (5th Cir. 1962)................................................13

*Willy v. Harris Cnty.*, 831 F. App'x 132 (5th Cir. 2020)........................................12

**Statutes, Regulations, and Rules**

12 C.F.R. § 1026.9(c)(2) ................................................................6

15 U.S.C. § 1604(d) ................................................................9

Fifth Cir. Local R. 40.2 ................................................................10

**Other Authorities**

16 Charles A. Wright & Arthur Miller, Federal Practice & Procedure
§ 3924.1 (3d ed)............................................................ 12, 13

## INTRODUCTION

This Court's opinion granting Plaintiffs' petition for mandamus rightly rests on the undisputed fact that the CFPB's Credit Card Penalty Fees Rule ("Final Rule") is imposing irreparable harm on credit card issuers.  As the May 14 effective date rapidly approaches, issuers are rushing toward compliance, and irreparable harm is occurring—and compounding—with each day that passes. Issuers cannot simply flip a switch on May 13 at 11:59 p.m. to implement the $8 fees, and they are nearing the point of no return.  Absent the immediate protection of a stay or injunction pending appeal, issuers throughout the nation will be forced to begin mailing and distributing hundreds of millions of pages of updated application, marketing, and disclosure materials that they have been rapidly preparing, so that these materials arrive in thousands of distribution centers and are available to customers no later than May 14.  As the CFPB well knows, if issuers are compelled to lower their late fees to $8 and then raise them again after succeeding in this litigation, they must provide 45 days' advance written change-in-terms notice to customers and *once again* update their application, marketing, and disclosure materials for new applicants and accounts, inevitably resulting in immense customer confusion and frustration.  This Court should deny the CFPB's misguided petition for rehearing and reject its attempt to delay a decision until after issuers reach the point of no return. Plaintiffs

1

respectfully request that the Court take swift action to grant an administrative stay or injunction pending appeal to provide relief from these substantial burdens.

The CFPB's request for rehearing—which it waited to file until nearly two weeks after this Court granted Plaintiffs' emergency petition for mandamus—is yet another procedural gambit to obtain through delay and forced compliance what it fears it cannot obtain on the merits—a sea change in the regulatory landscape. The CFPB makes two principal arguments: that this Court erred in concluding that there was an effective denial of Plaintiffs' motion for a preliminary injunction, and that the panel's approach is unworkable. Neither contention passes muster (and neither addresses the reasoning of Judge Oldham's concurring opinion, which provides an independent basis for mandamus).

First, the CFPB takes issue with the panel's conclusion that there was an effective denial, contending that it rests on "flawed factual premises." Pet'n 3. Without saying so directly, the CFPB argues that there is no exigency necessitating swift relief. That could not be farther from the truth. The CFPB's belabored parsing of the opinion does not change the Court's key determination that there is a "legitimate basis for the urgency." Panel Op. 9. Plaintiffs established—and the CFPB did not contest—that credit card issuers must take action well in advance of the effective date and thus were "already suffering" irreparable harm and would suffer more "imminently," *i.e.*, "within days," at a rate that increases every day.

App.151; App.192; App.204; App.154.[1]  These immediate and irreparable harms,

supported by over a dozen undisputed declarations, called for swift relief.

Second, the CFPB's argument that the panel decision is "unworkable" is

belied by this Court's context-based inquiry.  *See* Pet'n 7.  This Court properly

recognized that "whether a district court fails to act promptly depends entirely on

context."  Panel Op. 7.  It described in detail the specific circumstances of this case,

including the Final Rule's "unusually short timeline," Plaintiffs' "diligence in

seeking to expedite briefing and consideration," and the Plaintiffs' legitimate

showing of urgency. Panel Op. 8-9.  Courts are familiar with these fact-specific

inquiries.  While the CFPB may disagree with the panel's assessment of the facts in

this case, there is nothing "unworkable" about the decision.  The CFPB's petition

for rehearing should be denied.

## ARGUMENT

**I.   The panel properly concluded that there was a legitimate basis for urgency.**

This Court held that the district court effectively denied Plaintiffs' motion for

a preliminary injunction when it failed to act "promptly" in light of the "unique

expedited nature" of this case and the "legitimate basis" for Plaintiffs' urgency.

---

[1] This brief cites to the Appendix filed in the preliminary injunction appeal pending in this Court, No. 24-10248, which Plaintiffs re-filed for purposes of their petition for mandamus.

Panel Op. 6-8.  That ruling is eminently sensible given the short compliance period that the CFPB imposed on issuers, as well as the district court's decision to *sua sponte* order briefing on venue and transfer, its refusal to expedite a decision on the preliminary-injunction motion, and its subsequent decision to transfer the case, with no acknowledgment of the harms Plaintiffs were facing.

The CFPB first argues that this Court's decision depends "entirely" on the "premise" that all large credit card issuers must distribute new disclosures to customers by March 29.  Pet'n 3-4.  But that is not a fair reading of the opinion, which from beginning to end focuses on the unusually short compliance window that the CFPB imposed and the resulting compliance costs that issuers were already being forced to incur.  *See e.g.,* Panel Op. 7 ("When CFPB enacted the Final Rule on March 5 and set an effective date of May 14, it created a short runway for issuers to comply or seek preliminary injunctive relief.").

The CFPB urges that the panel misunderstood the type of notice that needed to be sent by March 29.  To clarify, there are two types of materials that issuers must send as a result of the Final Rule, discussed further below: (1) updated marketing, application, and disclosure materials stating the new $8 fee, which all agree must be available on the effective date of May 14, and (2) notices of mitigating changes, *i.e.*, changed terms (such as higher interest rates) that issuers may decide to implement

to mitigate lost revenues caused by the Final Rule.  As discussed further below, the March 29 date is relevant to the second type of notice for mitigating changes.

Notices of $8 fee.  The parties agree that, because the new rule will lead to a reduction in late fees charged, issuers do not need to provide 45 days' notice of the change to their existing customers under federal law.  But the parties also agree that the Final Rule requires issuers to ensure that disclosures provided on or after May 14 reflect the new $8 fee. That means issuers must remove and replace all existing marketing materials, credit card applications, and other printed materials that disclose the applicable late fee amount and ensure that they are ready and available for customer distribution by May 14 (including by updating electronic systems). And these printed materials are found not just in bank branches nationwide, but in the stores of retail partners for store-branded cards, and in processing warehouses where new credit cards are printed and combined with disclosure inserts for mailing. App.204.  Moreover, issuers need to ensure that all of the electronic and soon-to-be printed periodic disclosures (e.g., monthly statements) that mention the reduced late fee will also accurately display the late fee amount after May 14.  Given the hundreds of millions of credit card accounts in this country, this is a massive undertaking that required issuers to begin compliance immediately.  *See* App.140 (collecting declaration citations). As the Court noted, providing those types of credit card

disclosures "typically takes 4 months"—not the mere 60 days that the Final Rule provides. Panel Op. 7.

Notices of mitigating changes. This Court correctly understood that March 29 was a significant date. In the Final Rule, the CFPB repeatedly assured that issuers can make mitigating changes to other card terms to offset the losses from the lower late fees that become effective on May 14. *See, e.g.*, App.076 ("[I]ssuers can mitigate the costs of the proposal to some extent by taking other measures [e.g., increasing interest rates . . .]"); *id.* at App.077, App.079 n.54, App.080, App.081, App.082, App.084. If issuers decided to make such mitigating changes contemporaneous with the Final Rule's effective date, they had to ensure that customers received notice of the changes at least 45 days *before* the May 14 effective date, *i.e.*, on March 29. *See* 12 C.F.R. § 1026.9(c)(2). The CFPB, like the dissenting opinion, asserts that this Court should have ignored March 29 because the Final Rule does not *require* issuers to make these mitigating changes. *See* Panel Op. 24-25 & n.2 (Higginson, J., dissenting). But the CFPB cannot recommend that issuers make mitigating changes to minimize the costs of its rule, and then completely ignore the need for those mitigating changes when opposing a preliminary injunction. In any event, March 29 has come and gone. With each additional day that passes, issuers have been put to the choice of either having to send notices that may prove unnecessary and confusing to consumers, or enduring a period of unmitigated losses.

Nothing in the CFPB's petition undermines the Court's opinion or calls for reconsideration.  To the extent that the Court misunderstood which types of notices needed to be sent on which date, that has no bearing on the Court's key determination that the district court disregarded Plaintiffs' urgent need for relief.  This Court correctly concluded that there was "a legitimate basis for [] urgency" given the "unusually short timeline for complying with the Final Rule or obtaining injunctive relief."  Panel Op. 8-9; *see also id.* at 8 ("Given the Chamber's diligence in seeking to expedite briefing and consideration, and its repeated requests for a ruling by specific dates so as to avoid substantial compliance with the new rule, the district court effectively denied the motion by failing to rule on it by those dates and *sua sponte* inviting briefing on venue/transfer.").  And as the Court explained (and the CFPB does not dispute in its petition), the "CFPB [did] not contradict the Chamber's summary of the timeline or what the Final Rule requires credit card issuers to do by the effective date," but merely argued that the "compliance costs, which the Chamber says are substantial, are in fact negligible."  Panel Op. 9.  If anything, the opinion understated the immediate and irreparable harm that issuers face.  Indeed, in its district court briefing, the CFPB did not even contest Plaintiffs' arguments regarding irreparable harm, and the district court did not address them.  The CFPB's uncharitable reading of this Court's analysis misses the forest for the trees.

The other supposedly "flawed factual premises" identified in the petition are manufactured errors that deserve little attention.

First, the CFPB argues that the panel incorrectly "suggested" that swift action was necessary to grant Plaintiffs "effective permanent relief." Pet'n 5 (emphasis omitted). Parsing words, the CFPB explains that the "permanent relief [Plaintiffs] seek . . . [is] reinstatement of the old rule," not recovery of "the cost of preparing new account documents." Pet'n 5. Once again, the CFPB reads this Court's words out of context. The Court was emphasizing the need to provide "*effective*" relief, Panel Op. 7 (emphasis in original), and proceeded to focus on the burdensome compliance costs—which are indisputably unrecoverable—imposed by the CFPB's compressed 60-day timeline.

Second, the CFPB argues that this Court incorrectly determined that "Plaintiffs had attested that providing notice to consumers typically takes 4 months," claiming that Plaintiffs did not "attest[]" to this but "offered only an unsworn comment letter a third-party service provider submitted in response to the proposed rule." Pet'n 6 (internal bracketing omitted). That contention is frivolous. Not only is the letter from the third-party service provider part of the administrative record in this case, but Plaintiffs pointed to this letter in a declaration. App.186-87; App.208. In the letter, the service provider explained, consistent with the uncontested declarations in the case, that it typically requests four months' notice for

modifications of account disclosures and that the new industry-wide disclosures contemplated by the proposed rule would take approximately 10 months to print and distribute.  App.208; *see* App.186-87; App.406; App.204.

The CFPB mistakenly claims that Plaintiffs "offer[ed] no competent evidence that card issuers actually need so much time" to update their disclosures or that "they couldn't prepare any required new documents by the effective date."  Pet'n 6.  Plaintiffs submitted a declaration from one large card issuer stating that it "has never updated disclosures on this scale in less than six months."  App.204 (filed March 6, 2024).  Another declaration explains that a different large issuer needed five months to update its disclosures to reflect a new late fee amount in 2021.  App.406.  It is the CFPB that has not offered any evidence to support its assumption that issuers can accomplish these tasks in 60 days' time.  And that assumption, of course, is not shared by Congress, which mandated that any new CFPB rules requiring updated disclosures give issuers at least *six months* of lead time.  15 U.S.C. § 1604(d).

Third, the CFPB disagrees with this Court's observation that the Plaintiffs acted diligently, on the ground that Plaintiffs should have sought a temporary restraining order.  Pet'n 6-7.  The CFPB cites no precedent to support its theory that seeking a temporary restraining order is required to demonstrate diligence—particularly when a plaintiff files a complaint "within two days" of issuance of a

rule, "request[s] a ruling on its preliminary injunction within 10 days," and demonstrates "good cause to expedite the briefing schedule." Panel Op. 7.

Fourth, the CFPB argues that a transfer would not have frustrated Plaintiffs' attempt to obtain timely relief because "the Rule does not require compliance until May 14," which was "more than 6 weeks" away at the time of the transfer order. Pet'n 7. But the undisputed record in this case shows that compliance costs would be incurred well in advance of May 14, *i.e.*, "within days" of the publication of the Final Rule. *E.g.*, App.154 ("members will have to within days begin updating all of the printed disclosure inserts that accompany new credit cards"). A ruling on or near May 14 is far too late to prevent the irreparable harm of all of those significant compliance costs.

## II.   The panel's approach is workable.

The CFPB wrongly portrays this Court's decision as breaking new ground and creating an "unworkable" standard that intrudes on the discretion of district court judges. Pet'n 7. As an initial matter, the petition does not raise any new arguments absent from its prior briefing, many of them also aired by the dissent. *Compare* Resp. Opp'n to Pet'n 1 (stating this case involves ordinary exercise of district court's discretion) *with* Pet'n 9-12 (discussing importance of deference to district court discretion). Its petition is merely "reargument." *See* Fifth Cir. Local R. 40.2 (A petition for panel rehearing is "not used for reargument").

In any event, the CFPB's arguments ignore the Court's emphasis on context and the unique circumstances of this case. The Court did not adopt a bright-line rule that applies in all cases. Rather, in holding that the district court effectively denied relief, this Court properly recognized that "whether a district court fails to act promptly depends entirely on context." Panel Op. 7. It described in detail the specific circumstances of this case, ultimately concluding that "the district court did not act promptly." Panel Op. 7. It noted the Final Rule's "unusually short timeline," Plaintiffs' "diligence in seeking to expedite briefing and consideration, and its repeated requests for a ruling by specific dates so as to avoid substantial compliance with the rule," as well as the district court's "fail[ure] to rule on [the motion] by those dates and *sua sponte* inviting briefing on venue/transfer" and then transferring the case out of the district. Panel Op. 7-8.

And this Court properly cabined the reach of its ruling, explaining that Plaintiffs cannot simply "claim[] effective denial when they don't get [a ruling] on their preferred timeline," but must show "a legitimate basis for the urgency." Panel Op. 8-9. It reinforced the "wide discretion" of district courts "in managing their docket" and further "emphasiz[ed] that what counts as an effectual denial is contextual—different cases require rulings on different timetables." Panel Op. 9. "Even so," this Court concluded, "the Final Rule's fast-closing window for compliance demanded faster review of the motion for a preliminary injunction." *Id.*

In short, this Court was clear that it applied existing law on effective denials to the "unique expedited nature of the case." *Id.* at 6.

This Court's context-based inquiry properly reflects the unique circumstances of this case. The CFPB imposed an unreasonable (and unlawful) timeline on issuers, accruing irreparable harm was undisputed, and the district court made very clear that it was not interested in considering the case on an expedited basis, instead *sua sponte* ordering briefing on venue and ultimately transferring the case. What is more, the district court failed to even mention the irreparable harms cited by Plaintiffs. There can be no risk of intruding on the discretion of the district court when it fails to acknowledge, much less address, the harms creating the exigency. In this particular context, mandamus was easily justified.

The CFPB argues that the standard for finding an effective denial is "no longer clear," claiming that the panel "dilut[ed]" an established requirement to make "'strong showing of apparent need.'" Pet'n 8-9 (quoting *Willy v. Harris Cnty.*, 831 F. App'x 132 (5th Cir. 2020) (unpublished per curiam) (quoting 16 Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3924.1 (3d ed)). In support of its newly proposed "strong showing of apparent need" requirement, the CFPB cites an unpublished summary decision that quotes the Wright & Miller treatise— the very same treatise that this Court's opinion cited throughout its recitation of blackletter law that "failure to rule on a motion for relief" can constitute effective

denial in some circumstances. 16 Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3924.1; *see* Panel Op. 6-9 (citing same section of Wright and Miller three times). Indeed, the treatise itself approvingly cites Fifth Circuit law on just this point. *Compare* 16 Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3924.1, n.14 (3d ed) (citing *U.S. v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962)), *with* Panel Op. n.12 (same). This Court did not break new ground.

In any event, regardless of what standard applies, Plaintiffs have satisfied it, because they have made a strong showing of substantial need, for the reasons discussed by this Court. A fair reading of the opinion confirms that there is no daylight between this Court's opinion and the test proposed (for the first time) by the CFPB. After citing the canonical precedents, this Court determined that "the Chamber has made the case that its urgency is justified" and emphasized that this is a "contextual" inquiry. Panel Op. at 9. The CFPB is trying to manufacture a discrepancy where there is none.

If the CFPB is concerned about a rise in effective denials and the pressure they may place on district courts, it should not adopt rules with unlawful effective dates that require regulated parties to immediately incur unrecoverable compliance costs. Or, of course, it could choose to stay its own rules while the parties litigate their claims, as other agencies have recently done. *See, e.g.*, Defendants' Notice Regarding Extension of Effective Date of Final Rule, *Chamber of Commerce of the*

*United States of America v. NLRB*, No. 6:23-cv-00553, Dkt. No. 19 (E.D. Tex. Nov. 16, 2023); Letter to Clerk of Court, *State of Iowa et al. v. SEC*, No. 24-1522 (8th Cir. Apr. 4, 2024) (stating Commission voted to stay climate disclosure rule pending judicial review).  What the CFPB cannot do is demand that regulated entities take instant action to comply with a new rule while simultaneously arguing that there is no need for urgent relief.

Plaintiffs' members sought a preliminary injunction 50 days ago.  They have already suffered irreparable harm.  And every day that goes by, they get closer to a point of no return.  Plaintiffs respectfully ask this Court reject the CFPB's latest attempt to delay this case.

## CONCLUSION

The CFPB's petition for panel rehearing should be denied.

Dated:  April 26, 2024                     Respectfully submitted,


                                            */s/ Michael Murray*
                                            Michael Murray
                                            D.C. Bar No. 1001680
                                            michaelmurray@paulhastings.com
                                            Tor Tarantola
                                            D.C. Bar No. 1738602
                                            tortarantola@paulhastings.com
                                            PAUL HASTINGS LLP
                                            2050 M Street NW
                                            Washington, DC 20036
                                            (202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***COUNSEL FOR PETITIONERS***

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on April 26, 2024, I filed foregoing motion via the Court's CM/ECF system and

also caused the foregoing to be served by email on the following counsel for

Defendants-Appellees:

Stephanie Garlock
Justin Michael Sandberg
1700 G Street, NW
Washington, DC 20552
stephanie.garlock@cfpb.gov
justin.sandberg@cfpb.gov

*/s/ Michael Murray*
Michael Murray
*Attorney for Petitioners*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of Fed. R. App. P. 40(b)(1) and Fifth Circuit Rule 40.3 because it contains fewer than 3,900 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 26, 2024

*/s/ Michael Murray*
Michael Murray
*Attorney for Petitioners*